Edwin W. BLINN, Wilmer Bricker, Robert Brookshire, Mildred Cox, A. S. Del Greco, M. E. Detamore, Marna Dunica, Ethel Fall, Earl C. Hill, V. R. Hyman, Earl F. McMahan, John Moriarity, Orville Moriarity, E. H. Reuter, Orville Sneed, Charles T. Stewart, George Stoeckmann, John M. Thompson, and Mildred Yeazel, Appellants (Plaintiffs Below),

v.

The CITY OF MARION, Indiana, Appellee (Defendant Below).

No. 2–678A215.

Court of Appeals of Indiana, Fourth District.

June 20, 1979.

Rehearing Denied July 27, 1979.

Patrick N. Ryan, Marion, for appellants.

John B. Milford, Warren Haas, Marion, for appellee.

YOUNG, Judge.

The appellants Blinn, et al., brought this action to challenge the validity of certain proposed public expenditures by the City of Marion. This action was prosecuted, in certain of its counts, as a public lawsuit. *See* IC 1971, 34-4-17-1 et seq. (Burns Code Ed.). The trial court granted summary judgment for the City. We reverse.

The circumstances necessary for an understanding of this lawsuit are as follows. In the autumn of 1977 the City initiated certain procedures to obtain funds for the construction of a new city hall. The first step in this process was for the common council to pass an additional appropriation ordinance. IC 6-1.1-18-5. Public notice was given for the first reading of the ordinance. The first reading was held at the council meeting of November 15, 1977.

The second reading was scheduled for December 6, 1977. Notice was published in the Marion News-Herald on November 18 and 25, 1977. Notice was also given in the Marion Chronicle-Tribune on November 19 and 26, 1977. This notice was required to be given, and was indeed given, at least ten days before the meeting date of December 6, 1977. IC 6-1.1-18-5; IC 6-1.1-17-4.

However, the meeting of December 6 was never held due to a snow storm. Consequently, the second reading took place on December 20, 1977. This was the next regularly scheduled council meeting. Notice for this meeting was given on December 16 in the News-Herald, and on December 17 in the Chronicle-Tribune. This notice was obviously not given ten days in advance of December 20. IC 6–1.1–18–5, IC 6–1.1–17–4, *supra*. This circumstance serves as one basis for the appellants' lawsuit.

On December 20, the ordinance was given a second reading. This procedure apparently was completed at about 11:00 P.M. The Mayor, Anthony Maidenberg, immediately attempted to call a council meeting forty-eight hours hence for December 22, 1977, to commence at 11:00 P.M. The purpose of this proposed meeting was to give the ordinance the third and final reading. Forty-eight hour notice was required, the mayor believed, by the Sunshine Law, IC 5–14–1.-5–5(a). The explanation for the haste to schedule the third reading was that the City had to act promptly in order to obtain approval for the expenditure by the State Board of Tax Commissioners before the calendar year 1977 expired. Whether the mayor complied with the forty-eight hour notice requirement is a second basis for the lawsuit. A third basis is the propriety of scheduling the council meeting to commence at 11:00 P.M., as explained above.

At the meeting on December 22, the ordinance was passed and signed by the mayor. The next day, it was transmitted to the Grant County Auditor, and then to the State Board of Tax Commissioners. The Board approved the expenditure on December 30, 1977.

We have recounted these circumstances solely for the purpose of describing the genesis of this lawsuit. The trial court did not necessarily find these circumstances to be true as matters of fact within the meaning of Ind. Rules of Procedure, Trial Rule 56.

In addition to the three issues noted above, the appellants also alleged that the ordinance was void for vagueness. The fifth and final basis for the complaint was that it was void due to a conflict of interest. The alleged conflict developed because some of the land to be purchased pursuant to the ordinance was owned by the mayor's father. All five of these issues are discussed below. The City, in turn, argues on appeal that the entire lawsuit must be classified as a "public lawsuit," and that the appeal is moot because the City has proceeded to spend the money appropriated by the ordinance in question. We decline to address the City's first argument because it does not bear upon the merits of the appeal, and we decline to consider the second argument because this case is not moot.

We hold that the trial court erred with respect to whether the City complied with the forty-eight hour notice requirement of the Sunshine Law. We furthermore reverse for the trial court to redetermine whether a conflict of interest existed. These two issues are addressed at the outset.

## A.

The Sunshine Law requires, *inter alia*, that forty-eight hour notice must be given for council meetings. IC 5–14–1.5–5(a). This notice must be posted. IC 5–14–1.5–5(b)(1). These requirements must be liberally construed in favor of the appellants. IC 5–14–1.5–1. The Legislature has decreed as a matter of substantive law, that action taken by the City in violation of the Sunshine Law is void. IC 5–14–1.5–7.

The City does not deny that the Sunshine Law applies to its proceedings nor does the City contend that it falls within an exception to the Sunshine Law. The City does assert, however, that as a matter of fact, it has complied with the applicable provisions. The record of this cause is to the contrary.

The crucial point is whether the City had posted written notice of the December 22 meeting forty-eight hours in advance thereof. IC 5–14–1.5–5(b)(1). M. Jack Edwards, the City Clerk, executed an affidavit which states in pertinent part as follows:

"2. That as the Clerk of the City of Marion, his duties include causing the publication and posting of notices of meetings of the common council. That on December 20, 1977 he heard Mayor Maidenberg stand up around 11:00 P.M. and call a special meeting for 11:00 P.M. on December 22nd. The announcement by the Mayor was a surprise to him and he had no time to prepare notices to post. Accordingly he could not give any notice of the meeting to be held within 48 hours."

Consequently, it must be accepted as true by us that the city official who had the duty to post the notice did not do so within the appropriate time; i. e., by 11:00 P.M. on December 20.

The City, however, points to the affidavit of Mayor Maidenberg. With respect to the requirement of posting, IC 5–14–1.5–5(b)(1), the mayor stated:

"2. That on December 20, 1977, at a regularly scheduled meeting of the Marion City Council, he called a Special Meeting of said Council for Thursday, December 22, 1977, at 11:00 o'clock p. m., pursuant to I.C. 18–1–6–2 and I.C. 5–14–1.5–5.

"3. That at least forty-eight (48) hours prior to the meeting of December 22, 1977, at 11:00 p. m. he gave notice of said meeting to all members of the Marion City Council present at the December 20, 1977, meeting and gave notice to all news media present at said meeting, which included: The Marion Chronicle Tribune, the News Herald, WBAT Radio Station, and WGOM Radio Station.

"4. In addition to the above notice, he posted a copy of the written notice given to the members of the Marion City Council on the 'Sunshine Board' located in the rotunda of the Marion City Hall.

"5. That all of the required notice was given at least forty-eight (48) hours prior to the meeting of December 22, 1977."

█ The mayor's affidavit is insufficient to serve as a basis for the summary judgment.

First, the fact of whether or not notice was posted by 11:00 P.M. on December 20 is peculiarly within the knowledge of only the mayor. Consequently, whether the City complied with IC 5–14–1.5–5(b)(1) depends solely upon the credibility of the mayor. Summary judgment should not have been granted because the fact which is crucial to the outcome of the case is within the peculiar knowledge of the mayor, and the entry of judgment forever foreclosed the opportunity to challenge the mayor's credibility before the finder of fact. It is error "to base a summary judgment on the deposition of an interested party on facts, . . ., known only to him—a situation where demeanor evidence might serve as real evidence to persuade a trier of fact to reject his testimony." *National Aviation Underwriters, Inc. v. Altus Flying Service, Inc.,* (10th Cir. 1977) 555 F.2d 778, 784. "While we have recently emphasized that ordinarily the bare allegations of the pleadings, unsupported by specific evidentiary data, will not alone defeat a motion for summary judgment . . ., this principle does not justify summary relief where, as here, the disputed questions of fact turn exclusively on the credibility of movants' witnesses." *Cross v. United States,* (2d Cir. 1964) 336 F.2d 431, 433. " 'Particularly where, as here, the facts are peculiarly in the knowledge of defendants or their witnesses, should the plaintiff have the opportunity to impeach them at a trial; and their demeanor may be the most effective impeachment.' " *Subin v. Goldsmith,* (2d Cir. 1955) 224 F.2d 753, 758.

Second, insofar as the mayor's affidavit (especially paragraph no. 4) states that the mayor gave notice as "required" by statute, this is a conclusion on the part of the mayor and thus insufficient upon which to base a summary judgment. Whether or not notice was given as "required" by statute is a mere legal conclusion and, therefore, such averments add nothing to the affidavit. *Podgorny v. Great Central Ins. Co.,* (1974) 160 Ind.App. 244, 311 N.E.2d 640, 647.

Third, whether or not the mayor was in the rotunda and posted notice there at 11:00 P.M. on December 20, could have been stated in a short, plain, declaratory statement

in the body of the affidavit. Such a simple statement, so easy to have made yet so important to the outcome of the case, is absent. The failure to carry out this easy yet important step cannot help but create a suspicion that more inquiry is needed on this issue.

In the absence of a direct averment that, in fact, the mayor posted notice at 11:00 P.M. on December 20, the City's argument can only be based upon a strained construction of the affidavit. Tacking his averments together, the mayor is impliedly asserting that he was in the rotunda at 11:00 P.M. on December 20 to post the notice. The affidavit forces this implication because under no other construction could the mayor claim to have posted notice forty-eight hours in advance of the 11:00 P.M. meeting of December 22, as required by IC 5–14–1.5–5(b)(1). However, the affidavits in the record, including the mayor's own affidavit, place the mayor at the city council meeting at 11:00 P.M. on December 20. There is no explanation forthcoming from the affidavits to explain how the mayor could be present in the rotunda at 11:00 P.M. to post the notice for the meeting of December 22, and also simultaneously be present in the council meeting room at 11:00 P.M. to call the meeting for December 22.

All this is sufficient to create doubt as to whether the City complied with IC 5–14–1.-5–5(b)(1). Trial Rule 56 requires that we resolve this doubt against the City. To repeat, the City Clerk, whose duty it is to give notice, denies that he gave notice. And, the mayor's explanation places him in two places at the same time—an inconsistency too important to be overlooked.

 In conclusion, summary judgment is inappropriate even though only a few facts may be in issue. *Brandon v. State*, (1976) 264 Ind. 177, 340 N.E.2d 756, 761. We cannot weigh the evidence or determine for whom it preponderates. *Glosser v. City of New Haven*, (1971) 256 Ind. 33, 267 N.E.2d 67, 71; *Central Realty, Inc. v. Hillman's Equip., Inc.*, (1969) 253 Ind. 48, 246 N.E.2d 383, 389. Summary judgment is

especially inappropriate because the information is peculiarly within the knowledge of the mayor. *National Aviation Underwriters, Inc. v. Altus Flying Service, Inc., supra; Cross v. United States, supra; Subin v. Goldsmith, supra* ; 3 W. Harvey, Indiana Practice 553 (1970).

Applying this law to the case at bar, we conclude that there is a genuine issue of material fact concerning compliance with the Sunshine Law. Summary judgment, therefore, was erroneously granted.

### B.

The second issue is whether there was a conflict of interest with respect to the purchase of land for the new city hall.

The appellants contend, and the City has not denied, that part of the land would be purchased from a trust of which the mayor's father was both the settlor and the beneficiary. The trust document itself is not in the record. However, its absence is of no import because, as explained *infra*, our reversal upon this issue does not turn upon the language of the document.

We also point out that at the time this lawsuit was filed, January 19, 1978, the City had not yet completed the purchase of the land from the mayor's father. However, the City has assured us that, following the entry of judgment herein, the sale was completed. Thus, we are not addressing a hypothetical situation and the appellants' contention may not be considered to be premature. Furthermore, because the propriety of a significant public expenditure is at stake, this issue should be examined on the merits, *Lugar v. State ex rel. Lee*, (1978) Ind., 383 N.E.2d 287, and the appellants cannot be faulted for having promptly raised this issue at the earliest opportunity.

At the time this lawsuit was filed, any contract in which the mayor was "interested in", either directly or indirectly, was void. IC 18–1–2–4 (repealed effective July 1, 1978). The important issue is to determine the meaning of "interest."

Both at the trial court level and on appeal, the parties have tendered various com-

mon law notions of "interest." However, aside from these common law rules, we find that the Legislature itself has answered this question:

"(11) When a person is required to be disinterested or indifferent in acting on any question or matter affecting other parties, consanguinity or affinity within the sixth degree, inclusive, by the civil law rules, or within the degree of second cousin, inclusive, disqualifies the person from acting, except by consent of parties."

IC 1-1-4-1(11).

■ This statute is a general guide for the construction of all statutes and must be applied by us unless it would be, in the words of IC 1-1-4-1, "plainly repugnant" to IC 18-1-2-4. There is no "plain repugnance" between IC 1-1-4-1(11) and IC 18-1-2-4. Very simply, the City cannot properly contract to buy land from the mayor's father. The mayor would be "interested" in the contract, IC 1-1-4-1(11), and the contract would be void, IC 18-1-2-4. The Legislature itself has decreed this result. *See, e. g., Markley v. Rudy*, (1888) 115 Ind. 533, 18 N.E. 50 (county surveyor is incompetent to make ditch assessments where one of landowners is surveyor's father).

■ Some additional observations are in order. As far as we can determine, neither party advised the trial court about IC 1-1-4-1(11). On this appeal, neither party mentioned the statute. Nonetheless, we may review the merits of this cause in light of the statute and we may reverse for reasons not advanced by the parties. *Keeshin Motor Express Co. v. Glassman*, (1942) 219 Ind. 538, 38 N.E.2d 847, 854; *White v. White*, (1935) 208 Ind. 314, 196 N.E. 95, 96; *Big Creek Stone Co. v. Seward*, (1896) 144 Ind. 205, 43 N.E. 5. "If the court were limited to the arguments and reasoning of counsel in its decisions of cases, to the exclusion of its own observations, many cases would lead us far from what we understand to be the true object of the court." *Big Creek Stone Co. v. Seward, supra.*

■ Second, IC 1-1-4-1(11) forbids "interest" in terms of consanguinity. The fact that the land technically may have been held in trust ownership is of no importance because trust ownership neither enhances nor diminishes the forbidden degree of consanguinity. Also, the mere existence of consanguinity may be sufficient to void the contract, even though the mayor himself might not have actually pursued the contract. The statute, IC 18-1-2-4, operates to void the contract notwithstanding any degree of participation by the mayor. In this respect we note that the record discloses nothing less than the exercise of good faith by the mayor. Nonetheless, the Legislature has determined as a matter of substantive law that public policy is better served simply by voiding such contracts. *See United States v. Mississippi Valley Generating Co.*, (1961) 364 U.S. 520, 81 S.Ct. 294, 5 L.Ed.2d 268.

Finally, as we have noted, IC 18-1-2-4 has been repealed. Acts 1978, P.L. 144, § 13. The effect, if any, which this may have on the alleged contract in the case at bar is to be determined on remand by the trial court. For purposes of reviewing the summary judgment, our task is at an end once we have determined that the trial court erred in granting the judgment.

C.

We also will address the remaining three issues raised by appellants because they are likely to arise on remand.

The appellants claim that the City contravened the ten-day notice requirement of IC 6-1.1-18-5 and IC 6-1.1-17-4, by failing to give proper notice of the December 20 meeting. This contention fails.

■ The State Board of Tax Commissioners, as a prerequisite for the approval of the City's proposed expenditure, determined that the City had given sufficient notice within the meaning of the above statutes. Consequently, the present lawsuit, insofar as it questions compliance with these statutes, is a collateral attack upon the Board's decision. (Note, however, that the appellants' attack based on the Sunshine Law,

*supra*, was treated as a *direct* attack because compliance with the Sunshine Law was not a prerequisite to the Board's approval of the expenditure.) Where, as here, the attack is collateral, an alleged inadequacy in the number of days' notice is insufficient to overthrow the Board's decision. *Jackson v. Dyer*, (1885) 104 Ind. 516, 3 N.E. 863 (although statute requires twenty days' notice, nineteen days' notice is sufficient to withstand collateral attack); *Muncey v. Joest*, (1881) 74 Ind. 409 (although statute requires four weeks' notice, twenty-seven days' notice is sufficient to withstand collateral attack).

Thus, summary judgment was properly entered for the City on this issue.

### D.

■ The appellants contend that the City violated the Sunshine Law by holding the city council meeting of December 22 at 11:00 P.M. They argue that this was an unreasonably late hour of the night.

The Sunshine Law does not, by its terms, specify when city council meetings are to commence. In the case at hand, the hour of 11:00 P.M. was selected because the City, as explained above, tried to schedule the third reading as promptly as possible following the second reading on December 20. Also, this late hour resulted in part because the City desired to transmit the proposed expenditure to the State Board of Tax Commissioners for its approval before the calendar year expired. It is not inconceivable to us that the City, when faced with these various time limits, might be constrained to hold a council meeting at a late hour in order to satisfy the press of municipal business. Thus, without giving our unlimited approval to late-night meetings, and absent specific statutory directions, we hold that this issue must be resolved against appellants.

### E.

■ The final issue raised by appellants is that the ordinance is invalid because it is indefinite. The ordinance states:

"APPROPRIATION ORDINANCE
NO. 36–1977

"AN ORDINANCE OF THE CITY OF MARION, INDIANA, APPROPRIATING CERTAIN FUNDS FOR THE CITY OF MARION, INDIANA, AND PROVIDING FOR THE EFFECTIVE DATE THEREOF

"WHEREAS, the City of Marion, Indiana, has created a certain Fund; and

"WHEREAS, there are monies available for appropriation and transfer from said Fund without affecting the present tax rate of the Civil City of Marion, Indiana.

"NOW, THEREFORE, BE IT ORDAINED by the Common Council of the City of Marion, Indiana, that there be and is hereby appropriated and transferred the following:

From Cumulative Capital Improvement General Fund to Cumulative Capital Improvement Account # 73 the amount of $450,000.00 for costs relating to a new City office building.

"BE IT FURTHER ORDAINED, by the said Common Council of the City of Marion, Indiana, that an emergency is hereby declared to exist and that this Ordinance shall be in full force and effect immediately upon its passage by the said Common Council, approval by the Mayor, and approval by the State Board of Tax Commissioners of the State of Indiana, as provided by law for the making of additional appropriations and transfers.

"PASSED AND ADOPTED by the Common Council of the City of Marion, Indiana, this 22 day of Dec., 1977."

The appellants claim the ordinance is defective because the "costs" mentioned in the body of the ordinance are not defined or itemized. Inasmuch as the amount of many, if not most, of these costs would not be completely known at the time the ordinance was proposed, we do not believe that the point raised by appellants is so egregious as to render the ordinance invalid.

Reversed.

CHIPMAN, P. J., concurs.

MILLER, J., concurs in result.