Paul BOAZ as an Individual and on Behalf of the Bartholomew County Taxpayers Watch Group, Petitioner,

v.

BARTHOLOMEW CONSOLIDATED SCHOOL CORP., Columbus Four Star School Building Corp., and the State Board of Tax Commissioners, Respondents.

No. 49T10–9505–TA–00046.

Tax Court of Indiana.

July 28, 1995.

David W. Stone, IV, Stone Law Office & Legal Research, Anderson, for petitioner.

Pamela Carter, Atty. Gen., Ted J. Holaday, Deputy Atty. Gen., Indianapolis, for respondent State Bd. of Tax Com'rs.

Alan H. Lobley, Bette J. Dodd, Ice Miller Donadio & Ryan, Indianapolis, Charles R. Wells, Jr., Columbus, for respondents Bartholomew Consol. School Corp. and Columbus Four Star School Bldg. Corp.

## ORDER ON MOTION TO POST BOND

FISHER, Judge.

On April 18, 1995, the State Board of Tax Commissioners (the State Board) approved a lease rental agreement between the Bartholomew Consolidated School Corporation (the School Corporation) and the Columbus Four Star School Building Corporation (the Building Corporation) for renovation of, and new additions to, W.D. Richards Elementary School, Taylorsville Elementary School, Clifty Creek Elementary School, and L. Frances Smith Elementary School (collectively, the Schools). Paul Boaz, as an individual and on behalf of the Bartholomew County Taxpayers Watch Group (the Remonstrators), now appeals the State Board's action.

### ISSUE

Whether the Remonstrators must post bond in an amount to cover all damages and costs which may accrue to the Bartholomew Consolidated School Corporation in the event that the Bartholomew Consolidated School Corporation and the Columbus Four Star Building Corporation should prevail in this lawsuit.

### FACTS AND PROCEDURAL HISTORY

On November 22, 1994, the School Corporation and the Building Corporation executed a lease rental agreement to finance the renovation of, and new additions to, the Schools. Thereafter, a number of taxpayers, including the Remonstrators, filed a remonstrance with the Auditor of Bartholomew County objecting to the execution of the lease. On January 18, 1995, the State Board conducted a preliminary hearing to consider objections to the lease rental agreement and, on January 19, 1995, toured the Schools. On March 2, 1995, the State Board conducted a second hearing on the remonstrance. On March 15, 1995, the State Board toured the Schools for the second time. On April 18, 1995, the State Board approved the lease rental agreement.

The Remonstrators filed this appeal on May 16, 1995. In response, the School Corporation and the Building Corporation filed a motion to declare the case a public lawsuit and a motion to require the Remonstrators to post bond. The court held a hearing on June 9, 1995, to consider the motions. At that time, the court declared the action a public lawsuit. On June 23, 1995, the court heard argument on the motion to post bond. Additional facts will be supplied as necessary.

### DISCUSSION AND DECISION

The School Corporation and the Building Corporation request that the Remonstrators be ordered to post bond pursuant to IND. CODE 34–4–17–5. That statute provides, in relevant part:

> At any time prior to the final hearing in [a] public lawsuit, the defendant may petition for an order of the court that the cause be dismissed unless the plaintiff shall post a bond with surety to be approved by the court payable to defendant for the payment of all damages and costs which may accrue by reason of the filing of the lawsuit in the event the defendant prevails. A hearing shall be had on such petition in the same manner as the hearing on temporary injunctions under IC 34–1. If at the hearing the court determines that the plaintiff cannot establish facts which would entitle him to a temporary injunction, the court shall set the amount of bond to be filed by the plaintiff in an amount found by the judge to cover all damage and costs which may accrue to the defendants by reason of the pendency of the public lawsuit in the event the defendant prevails.

I.C. 34–4–17–5.

█ "[I]n order to avoid posting a bond, the Remonstrators must introduce evidence

sufficient to show that there is a substantial question to be tried." *Bell v. State Bd. of Tax Comm'rs* (1995), Ind.Tax, 651 N.E.2d 816, 821; *Johnson v. Tipton Community School Corp.* (1970), 253 Ind. 460, 464–65, 255 N.E.2d 92, 94.

## A. ASCERTAINABLE STANDARDS

The Remonstrators contend that IND. CODE 21–5–12–7(b)[1] provides no guidance as to what factors the State Board will consider when determining whether a lease rental agreement is necessary and whether the rental payments are fair and reasonable. Therefore, they insist that the State Board should have promulgated a regulation setting forth the factors it considers when acting pursuant to I.C. 21–5–12–7(b). Since there is no such regulation, the Remonstrators contend that they could not have known that the State Board would consider the number of signatures on their remonstrance petition as a factor in its decision making process. Accordingly, they maintain that there is a substantial question whether the State Board's approval of the lease rental agreement was in violation of Indiana's ascertainable standards rule and that they should be allowed to proceed to trial without having to post bond. The court disagrees.

Under Indiana's ascertainable standards rule, all administrative decisions must be in accord with previously stated, ascertainable standards. *Harrington v. State Bd. of Tax Comm'rs* (1988), Ind.Tax, 525 N.E.2d 360, 361 (citing *Podgor v. Indiana Univ.* (1978), 178 Ind.App. 245, 381 N.E.2d 1274, 1283). Consequently, there may be instances when an administrative agency must promulgate a written regulation in order to give persons fair warning as to what standards the agency will rely on when making a deci-sion. However, when the standards that an agency relies on are stated with sufficient precision in the statute itself, it is not necessary for an administrative agency to promulgate a regulation. *See id.* Moreover, "[s]tandards provided by statute need only be as specific as the circumstances permit considering the purpose to be accomplished by the statute." *Clarkson v. Dep't of Insurance* (1981), Ind.App., 425 N.E.2d 203, 208 (citing *Taxpayers Lobby of Indiana, Inc. v. Orr* (1974), 262 Ind. 92, 311 N.E.2d 814).

"The purpose of I.C. 21–5–12–7 is to require the State Board to determine whether a lease rental agreement is necessary and whether the rental payments are fair and reasonable from a tax standpoint." *Bell*, 651 N.E.2d at 819–20 (emphasis omitted). As every school corporation is unique, so too is every lease rental agreement. Consequently, the State Board must have flexibility to consider the unique circumstances of every case that comes before it. I.C. 21–5–12–7(b) gives the State Board such flexibility. Indeed, I.C. 21–5–12–7 permits the State Board to consider any evidence that it finds relevant and helpful. *See Bell* at 820.

The fact that I.C. 21–5–12–7(b) permits the State Board to consider any evidence that it finds relevant and helpful does not mean that I.C. 21–5–12–7(b) contains no ascertainable standards. Indeed, the standard contained within I.C. 21–5–12–7(b) is that the State Board has authority to consider any evidence that it finds relevant and helpful. While the standard allows for flexibility, any standard more specific could not possibly take into account the myriad of factors that might be relevant in any given case, and would hinder the State Board from carrying out its duties under the statute.

---

1. I.C. 21–5–12–7(b) provides that after the execution of a lease rental agreement is authorized: Ten (10) or more taxpayers in [a] school corporation or corporations, who will be affected by the proposed lease and who may be of the opinion that no necessity exists for the execution of such lease, or that the proposed rental provided for therein is not a fair and reasonable rental, may file a petition in the office of the county auditor of the county in which such school corporation or corporations is located, ... setting forth their objections thereto and facts showing that the execution of the lease is unnecessary or unwise, or that the lease rental is not fair and reasonable as the case may be. Upon the filing of any such petition, the county auditor shall immediately certify a copy thereof ... to the state board of tax commissioners.... *The decision of the state board of tax commissioners on such appeal, upon the necessity for the execution of said lease and as to whether the rental is fair and reasonable, shall be final.* (emphasis added).

The level of community support for a particular project is relevant and helpful in determining whether a lease rental agreement is necessary and whether the rental payments provided therein are fair and reasonable from a tax standpoint. Indeed, it indicates whether taxpayers are willing to finance a school construction project. While the Remonstrators contend that the language of I.C. 21–5–12–7(b) provides no indication that the State Board would consider the number of signatures on their remonstrance petition, the number of signatures on a remonstrance petition is evidence of the level of community opposition to a particular lease rental agreement. Accordingly, the State Board was within the its authority to consider the number of signatures on the Remonstrators' petition.[2]

## B. TESTIMONY UNDER OATH

The Remonstrators complain that at the various State Board hearings, the State Board accepted testimony from witnesses who were not under oath. They further complain that because the witnesses were not under oath, their testimony was unreliable. This, they claim, raises a substantial question whether the State Board's approval of the lease rental agreement was based on unreliable evidence. Accordingly, they insist that they should be allowed to proceed to trial without having to post bond. The Court disagrees.

Under the Administrative Orders and Procedures Act (AOPA), "[a]ll testimony of parties and witnesses must be made under oath or affirmation." IND.CODE 4–21.5–3–26(b). The provisions of the AOPA, however, do not apply to proceedings before the State Board. IND.CODE 4–21.5–2–4(10). Consequently, the State Board is not required to place witnesses under oath before accepting their testimony.

The Remonstrators acknowledge that the AOPA does not apply to proceedings before the State Board. *Petitioners' Hearing Brief* at 10. Nevertheless, they assert that when a case involves a multimillion dollar bond project, due process requires that the testimony of witnesses be given under oath. The court recognizes that "due process is flexible and calls for such procedural protections as a particular situation demands." *B & M Coal Corp. v. Office of Surface Mining* (1983), 7th Cir., 699 F.2d 381, 384 (citing *Morrissey v. Brewer* (1972), 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484). The court is not convinced, however, especially in light of the Remonstrators' limited argument, that the dollar amount at issue in this case calls for greater procedural protections.

## C. POST HEARING EVIDENCE

The Remonstrators contend that when the State Board approved the lease rental agreement, it considered evidence submitted by the School Corporation after the March 2, 1995, remonstrance hearing. The Remonstrators complain that the State Board should not have considered the School Corporation's additional evidence because they had no opportunity to review or rebut it. This, they argue, raises a substantial question whether the State Board denied them a fair hearing and establishes that they should be allowed to proceed to trial without having to post bond. The court disagrees.

The record shows that the State Board accepted evidence from the School Corporation after the March 2, 1995, remonstrance hearing. *Transcript of June 9 Proceedings* at 11. The record does not, however, show that the Remonstrators had no opportunity to review or rebut that evidence. Rather, the record shows that the State Board sent a copy of the School Corporation's additional evidence to Mr. Boaz via facsimile transmission. *Affidavit of Katrina Hall* at ¶ 2–4;

---

2. The Remonstrators maintain that they collected 800 signatures of persons opposed to the lease rental agreement, but submitted only 16 signatures to the county auditor because, given her workload, the county auditor was reluctant to verify all 800 signatures. *Transcript of June 9 Hearing* at 19–20. Regardless of the reason the Remonstrators submitted only 16 signatures, they had the opportunity to explain to the State Board that there were additional signatures that were not submitted. Indeed, the transcript of the State Board's March 2, 1995, hearing shows that when the School Corporation testified that the Remonstrators had submitted only 16 signatures in opposition to the lease rental agreement, the Remonstrators were present but made no effort to "set the record straight." *See Defendant's Exhibit 4* at 7.

*Affidavit Exhibits* 1 and 1A. The record also shows that the State Board telephoned Mr. Boaz to verify that he had received the facsimile transmission, and that Mr. Boaz confirmed that he had. *Affidavit of Katrina Hall* at ¶ 5; *Affidavit Exhibit* 3. Moreover, the record shows that Mr. Boaz stated that he, too, would submit additional evidence to the State Board. *Affidavit of Katrina Hall* at ¶ 5. The fact that Mr. Boaz did not submit any additional evidence, however, does not change the fact that he, as an individual and as the Remonstrators' representative, had the opportunity to rebut the School Corporation's evidence by submitting his own evidence.

## D. THE NECESSITY OF THE LEASE

The School Corporation presented evidence that the Schools need additional space for classrooms and administrative facilities. Specifically, it presented demographic studies indicating the projected increase in the Schools' enrollment, a feasibility study contrasting the Schools' functional capacities with their actual capacities, as well as evidence that the current administrative facilities within the Schools are inadequate, if not safety hazards to the their students. *See Defendant's Exhibit 2; Defendant's Exhibit 5.*

In rebutting the evidence, the Remonstrators make a variety of claims which they believe establish that there are substantial questions to be tried. First, they allege that the demographic studies are not conclusive as to whether there will be an increase in enrollment. Second, the Remonstrators contend that the School Corporation has created an artificial shortage of classroom space. Third, the Remonstrators argue that the proposed administrative facilities are not necessary. Finally, the Remonstrators maintain that the construction projects are methods by which to rectify past errors in judgment. The Remonstrators' evidence is insufficient, however, to establish that there is a substantial issue to be tried.

■ First, the Remonstrators argue that the School Corporation's demographic studies are inconclusive as to whether there will be a substantial increase in enrollment. To support their argument, the Remonstrators point to the Bartholomew Consolidated School Corporation Community Feasibility Study which indicates that while one expert predicts an increase of about 800 students by the year 2003, another expert predicts an increase of about 300 students, and a third expert predicts no additional growth at all. *Defendant's Exhibit 2,* at Tab 3.

Despite the fact that the experts debate the precise number by which enrollment will increase, the Remonstrators have not shown any direct evidence that enrollment will not increase. Furthermore, the School Corporation's evidence indicates that its 1994–1995 enrollment figures for the Schools not only exceed actual capacity by 64 students, but also exceed functional capacity by 476 students. *Defendant's Exhibit 5* at Tab 4.[3]

■ Second, the Remonstrators allege that the School Corporation has created an artificial shortage of class space by building rooms for classes of 30 pupils and then utilizing them at much lower capacities. At the March 2, 1995, remonstrance hearing, however, the School Corporation presented evidence that the reason that some of the buildings may be utilized at less than their original capacities is because of the institution of the Prime Time program, as well as the implementation of all day kindergarten classes, computer classes, and special education classes. *Defendant's Exhibit 5* at Tab 4.

■ The decision to implement the Prime Time program, as well as the decision to implement other educational programs, is one properly delegated to the local school corporation, the Indiana Department of Education, and the State Board of Education. *See Bell,* 651 N.E.2d at 819. Indeed, those agencies have expertise in educational matters. *Id.* The State Board, on the other hand, is "Indiana's property tax specialist."

---

**3.** The School Corporation's Community Feasibility Study Committee determined that functional capacity is 92% of actual capacity.

It is not the function of the State Board to pass judgment on the implementation of educational programs. Rather, the State Board is to analyze the School Corporation's need for capital construction in light of the Schools' educational programs.

■ Third, the Remonstrators contend that the School Corporation's construction and remodeling plan includes excessive expenditures for administrative facilities, such as teacher preparation areas, conference rooms, faculty lounges, and larger reception areas. To support their argument, the Remonstrators cite the costs for each of the School's proposed administrative facilities. Consequently, they argue that there is a "substantial issue worthy of litigation as to whether such massive expenditures for administration facilities are necessities or merely desirable to the school personnel who use them." *Petitioners' Brief* at 19.

The mere recitation of costs for the administrative facilities does not tend to show that the costs are excessive. Furthermore, the evidence provided by the School Corporation indicates that the current administrative facilities are inadequate to conduct teacher/student/parent conferences. In addition, the School Corporation's evidence shows that the present administrative facilities pose substantial safety hazards to the students. *Defendant's Exhibit 2* at Tab 6.[4]

■ Finally, the Remonstrators argue that the lease rental agreement is unnecessary because the project calls for the taxpayers to pay for the School Corporation's poor judgment in designing the original structures. For example, the Remonstrators contend that when Taylorsville Elementary School was built in 1976, the building was designed around an open concept between classroom and the circulation system. Now, however, the School Corporation is attempting to add walls and acoustic partitions, when it should have known all along "that grade school children can be noisy." *Petitioners' Brief* at 18.

Essentially, the Remonstrators do not argue that the interior walls and acoustic partitions are not necessary, they just do not want to pay for them. The court fails to see how this poses a substantial question regarding the necessity of the lease rental agreement. Indeed, while a bad decision may have been made at an earlier time, it does not follow that the bad decision must be continued if it is harmful or not conducive to current educational programs.

### E. THE RENTAL PAYMENTS

■ At the bond hearing, the Remonstrators presented evidence indicating that while the cost of a new elementary school in Indiana is $86 per square foot, the average cost for this project is $128.04 per square foot. *Defendant's Exhibit 3* at 35. Consequently, the Remonstrators claim that there is a substantial question whether the rental payments are unfair and unreasonable.

The Remonstrators' evidence is based on a study that examines the average cost per square foot for five school projects, built between 1987–1993. *Defendant's Exhibit 3* at 35. The evidence provided by the Remonstrators, however, does not reveal the cost per square foot for each individual project, nor does it indicate in what year each project was built. As a result, the court has no way of knowing how the costs may vary between the individual projects. Furthermore, the Remonstrators make no attempt to account for the fact that construction costs could have increased significantly between 1987 and 1993 and, perhaps more importantly, since 1993. Thus, the Remonstrators have not established that there is a substantial question that the rental payments are unfair and unreasonable.

### F. AMOUNT OF BOND

Having found that there is no substantial question to be tried in this case, the court must now determine the amount of bond to be posted. At the bond hearing, the School Corporation presented evidence that a six-month delay in the project would cause an

---

4. Indeed, the administrative facility area at Smith School is located four tunnels and ramps from the main entrance of the school. Conse- quently, when primary entrances and exits cannot be monitored, a serious safety hazard is present to both students and faculty.

increase in construction expenses of $330,000. *Defendant's Exhibit 8.* The School Corporation also presented evidence that a six-month delay would cause an approximate $5,000,000 increase in the interest on the bond issue. *Defendant's Exhibit 9; June 9, 1995, Transcript* at 59–70.

Remonstrators contend, however, that the School Corporation's evidence is inaccurate. More specifically, the Remonstrators allege that the School Corporation calculated the interest increase on a $35,300,000 bond issue, instead of on a $34,300,000 bond issue. The Remonstrators contend that since the School Corporation saved nearly $1,000,000 when it hired its architects, any increase in interest to be paid will be offset by that $1,000,000.

■■■ Since the School Corporation's evidence is based on forecasts of increased construction costs and interest rates, and since there is evidence that the School Corpora-

tion's damages may be offset by $1,000,000, the court finds that should the Bartholomew County Consolidated School Corporation prevail in this lawsuit, damages and costs may accrue to it in the total amount of $4,330,000.

## CONCLUSION

For the reasons stated above, the Remonstrators are ORDERED to post bond in the amount of $4,330,000 with sureties to be approved by the Court within ten (10) days from the date of this order. If bond is not so filed, this suit shall be dismissed pursuant to I.C. 34–4–17–5.