**Charles HUGHES and Alex Cherry, Appellants (Plaintiffs Below),**

v.

**CITY OF GARY, et al., Appellees (Defendants Below).**

No. 45S00–0011–CV–636.

Supreme Court of Indiana.

Jan. 12, 2001.

Douglas M. Grimes, Gary, Indiana, Attorney for Appellants.

Hamilton L. Carmouche, Gilbert King, Willie Harris, James B. Meyer, Gary, Indiana, Thomas J. Brunner, Carl A. Greci, South Bend, Indiana, Attorneys for Appellees.

SHEPARD, Chief Justice.

Two members of the Gary city council appeal a trial court order that they post a $2.35 million bond or face dismissal of their lawsuit challenging the approval of funding for a $47 million public improvement project. We affirm the order to post bond and subsequent dismissal of the lawsuit.

### Facts and Procedural History

Plaintiffs Charles Hughes and Alex Cherry are two of nine members of the Gary Common Council. On June 20, 2000, the Council considered a proposal that would pledge about one-third of the City's riverboat casino gaming revenues over the next four years as security for bonds that will finance part of certain public improvements, including:

the renovation of the Genesis Center,[1] the renovation, construction and equipping of the former Mercy Hospital as a public safety and police headquarters

---

1. The Genesis Center is a convention facility in Gary.

building, renovation of parking facilities to service the Genesis Center, the acquisition, construction and equipping of a professional baseball stadium, and certain environmental remediation and demolition associated with the City's efforts to redevelop the City's waterfront (collectively, the "Project").... 

(R. at 37.) The Gary Redevelopment Commission will issue the bonds, totaling $31 million. The overall estimated project cost is $47 million.

The Council's agenda for its meeting of June 20, 2000, included the resolution pledging the gaming proceeds. The Council voted unanimously to defer a vote on the resolution until the next regular meeting, scheduled for July 5, 2000.

On June 22, 2000, Gary Mayor Scott King called a special meeting of the Council for June 27th, for the sole purpose of a final reading and vote on the resolution. The Council met on June 27th, with all members present, and passed the resolution by a margin of five to four. Mayor King signed it on July 3, 2000.

The plaintiffs filed suit on July 19, 2000. On August 16th, the trial court certified the action as a public lawsuit as defined by Ind.Code § 34–6–2–124, and it held an interlocutory evidentiary hearing two days later. At that hearing, the defendants presented evidence that delays caused by the litigation exposed the City to increased expense and losses due to inflation in construction industry costs, financing risk, and potential breach of contractual commitments.

On August 28, 2000, the trial court stated, as a conclusion of law, that the plaintiffs had not presented a substantial question for trial. Under Ind.Code § 34–13–5–7(c) and (e), it therefore ordered the plain-

tiffs to post bond to cover the minimum potential costs of delays caused by the lawsuit, in the amount of $2.35 million. It further ordered, per the statute, that the suit be dismissed with prejudice if the plaintiffs failed to post the bond within ten days.

The plaintiffs did not post bond, and the court dismissed the action on September 8, 2000. The plaintiffs appealed. Because this matter involves significant public interest and substantial sums of money, we granted transfer on November 9, 2000, to expedite its resolution.[2]

### I. Is There a Substantial Question to Be Tried?

■ It is undisputed that this action involves a public lawsuit under Ind.Code Ann. 34–13–5 (West 2000). Therefore, the following provisions of Ind.Code § 34–13–5–7 apply:

(a) At any time before the final hearing in a public lawsuit, the defendant may petition for an order of the court that the cause be dismissed unless the plaintiff posts a bond with surety to be approved by the court. The bond must be payable to the defendant for the payment of all damages and costs that may accrue by reason of the filing of the lawsuit if the defendant prevails.

(b) A hearing shall be held on a petition described in subsection (a) in the same manner as the hearing on temporary injunctions under IC 34–26–1. If, at the hearing, the court determines that the plaintiff cannot establish facts that would entitle the plaintiff to a temporary injunction, the court shall set the amount of bond to be filed by the plaintiff in an amount found by the judge to cover all damages and costs that may accrue to the defendants by reason of

---

2. We granted transfer under Ind. Appellate Rule 4(A)(9), which states:

When an appeal is filed in the office of the clerk, in the Court of Appeals, appellant or appellee may petition the Supreme Court to transfer such an appeal to the Supreme Court upon a showing, under oath, that the

appeal involves a substantial question of law of great public importance and that an emergency exists for speedy determination. The Supreme Court in its discretion may grant such petition and thereby take jurisdiction of such appeal.

the pendency of the public lawsuit in the event the defendant prevails.

(c) If the plaintiff does not file a bond with sureties approved by the court within ten (10) days after the order to do so is entered, the suit shall be dismissed.

Under this statute, plaintiffs must introduce sufficient evidence that there is a substantial issue to be tried in order to avoid the bond requirement. *Boaz v. Bartholomew Consol. School Corp.*, 654 N.E.2d 320, 322–23 (Ind. Tax Ct.1995) (citing *Johnson v. Tipton Community School Corp.*, 253 Ind. 460, 464–65, 255 N.E.2d 92, 94 (1970)).

■ The purpose of the public lawsuit statute and its related bond requirement is "to protect the public against a 'flood of harassing litigation' which obstructs and delays public improvement at prohibitive costs...." *Johnson*, 253 Ind. at 464, 255 N.E.2d at 94 (quoting *State ex rel. Haberkorn v. DeKalb Circuit Court*, 251 Ind. 283, 288, 241 N.E.2d 62, 65 (1968)). The statutes:

> provide for a vehicle for the citizens and taxpayers of the community to be represented in a suit that questions the validity of the actions taken by the local government unit for public construction, but at the same time provide for a means to limit the delay and frustration of the public project by those citizens who would bring an action or a series of actions for the sole purpose of delaying or changing the financing and construction of the proposed project.

*Pepinsky v. Monroe County Council*, 461 N.E.2d 128, 132 (Ind.1984).

Plaintiffs assert that, because they have raised two substantial questions for trial, the trial court erred in ordering them to post bond. These claims are: (1) that the resolution is invalid because the June 27, 2000 meeting was not properly convened, and (2) that the Council improperly delegated its powers in the resolution.

*A. The "Special Order" Ordinance.* At its June 20th meeting the Council voted unanimously to move its next regular meeting from July 4th to July 5th. It also voted to defer final action on the redevelopment resolution to the July 5th meeting. The Mayor's call of a special Council meeting for June 27th derived from Gary Ordinance 842 § 32.07(A) ("[s]pecial meetings of the Common Council may be held at the Council Chamber at any time on call of the Mayor or on call of any three or more members of the Common Council.") (*See* R. at 338.)

■ Plaintiffs argue that the Council's deferral of the final resolution vote from June 27th to July 5th converted the matter to a "special order" falling under Gary Ordinance 842 § 32.24. (Appellants' Br. at 14.) This ordinance states: "A matter before the Common Council may be set down as a special order of business at a time certain only by consent of a majority vote of all the members-elect of the Common Council." (*See* R. at 339.)

Nothing in the record supports the assertion that the Council did anything other than put the matter over to its next scheduled meeting as a normal item of business. The trial court's factual finding that "[i]n the minutes of the June 20, 2000 meeting, the vote to defer action on [the resolution] is not designated as a special order" is accurate. (R. at 197.) Therefore, the court correctly concluded that Mayor King acted within his statutory authority when he called the June 27th special meeting for a vote on the resolution, and that a two-thirds Council vote was not required to take the matter up on that date.

■ *B. The Council's Delegation of Power.* The plaintiffs claim that the resolution is invalid because the Council failed to allocate the total anticipated $31 million in bond proceeds among the various components of the redevelopment project. (Appellants' Br. at 15.) In their statement of the case, they say[3] that the resolution

---

**3.** These assertions are as follows:

**31.** The Resolution grants to the Mayor of

violates Ind.Code Ann. § 36–4–6–18 (West 2000), which gives a city's legislative body the power to "pass ordinances, orders, resolutions, and motions for the government of the city, the control of the city's property and finances, and the appropriation of money." They assert that the resolution impermissibly "confers arbitrary power and unregulated discretion on the Commission to appropriate and spend the bond proceeds." (Appellants' Br. at 15.)

In support of their argument on improper delegation, the plaintiffs cite two cases, but neither is relevant to the issue of whether the Council resolution is sufficiently detailed. (Appellants' Br. at 15–16.) They offer no further justification for their claim that the Council has overstepped its statutory authority. The plaintiffs therefore raise no substantial question of improper delegation.[4]

## II. Record Supports the Court's Findings

■ The plaintiffs argue that many of the trial court's findings of fact are unsupported by evidence of record. We review a trial court's findings of fact under a "clearly erroneous" standard and do not reweigh evidence or determine the credi-

bility of witnesses. Ind. Trial Rule 52; *Chidester v. City of Hobart,* 631 N.E.2d 908, 910 (Ind.1994). We consider the evidence most favorable to the judgment, with all reasonable inferences drawn in favor of the judgment. *Id.* (citations omitted).

■ Three of the disputed findings basically establish that the Council passed the resolution, which contained provisions described above, by a five to four margin.[5] The plaintiffs correctly point out that the June 27th Council meeting minutes contained in the record only evidence approval of an amendment to the resolution, not approval of the resolution itself. (Appellants' Br. at 9, R. at 130–32.) The record copy of the resolution, however, carries the signature of the presiding Council officer affirming that the Council passed the resolution on June 27th as amended. (R. at 37–39.) Furthermore, the plaintiffs themselves conceded in their verified complaint that "the motion [that the resolution be adopted as amended] was seconded and passed on a vote of 5 yes votes and 4 no votes." (R. at 17.)

■ Three challenged findings[6] relate to the issue of whether the Council's defer-

---

the City of Gary, Indiana, the exclusive right and privilege of controlling all gaming tax revenues, to the exclusion of the Gary Common Council in violation of IC 36–4–6–18.
32. Gaming tax revenue collected by the State of Indiana on behalf of the City from riverboat facilities licensed to operate in Gary are public funds that must be appropriated by the Council prior to expenditure. IC 36–4–6–18.
(Appellants' Br. at 7.)

**4.** In their reply brief, appellants add an assertion that "[t]he Resolution also attempts to pledge casino tax revenue as security for revenue bonds in violation of IC 13–21–8 et seq. in that the bonds are not payable solely from and secured by a lien upon the revenues of all or part of the facilities being financed with the revenue bond proceeds." (Appellants' Reply Br. at 3–4.) They make no argument in support of this claim, which in any event was belatedly raised, so again there is no substantial question for trial.

**5.** These specific findings read as follows:

**6.** These read as follows:

2. On June 27, 2000, the Gary Common Council passed [the resolution], which pledged approximately one-third of the gaming revenues received by the City of Gary ("City" or "Gary") over the next four years as security for bonds which will partially fund certain public improvements.
3. These public improvements are: (a) the renovation of the Gary Genesis Center and its parking facilities; (b) the renovation, construction and equipping of the former Mercy Hospital as a public safety and police headquarters building; (c) the acquisition, construction and equipping of a professional baseball stadium; and, (d) certain land preparation, road construction and building demolition work associated with the City's efforts to redevelop the City's waterfront (all collectively referred to as the "Project").
9. [The resolution] was passed by a five to four margin [ ].
(R. at 197–98.)

ral of a vote on the resolution constituted a "special order" and, therefore, whether the June 27th meeting was properly convened. Another relates to whether the plaintiffs have met their burden to produce sufficient evidence of a substantial question to be tried.[7] These issues are addressed above and require no further discussion.

■ Another challenged finding[8] is that the plaintiffs' lawsuit has delayed progress on the project. At the August 18th evidentiary hearing, the trial court heard testimony by an investment banker with experience in public finance. She testified that the lawsuit was holding up the letter of credit necessary for issuance of the bonds that will finance the project. This testimony sufficiently supports the trial court's finding of fact.

> 6. In the minutes of the June 20, 2000 meeting, the vote to defer action on [the resolution] is not designated as a special order.
> 7. On June 22, 2000, Mayor Scott King called a special meeting of the Common Council to be held on June 27, 2000, for the purpose of conducting a final reading and vote on [the resolution]. This action by the mayor was authorized under both Gary Ordinance 842, and I.C. Sec. 36–4–6–7(b).
> 8. On June 27, 2000, the Common Council convened with all members of the Council present. This action was not contrary to Indiana statute, or City of Gary Ordinance.
> (R. at 197.)

Appellants argue that any of the trial court's findings of fact that are stated as conclusions of law cannot be considered in reviewing the trial court's legal conclusions. (Appellants' Br. at 13.) We have held, however, that "where a trial court has made special findings pursuant to a party's request under Trial Rule 52(A), the reviewing court may affirm the judgment on any legal theory supported by the findings." *Mitchell v. Mitchell*, 695 N.E.2d 920, 923 (Ind.1998). Any debate over the classification of each trial court finding as one of fact versus law does not, therefore, affect our analysis.

7. This reads, in part:
> 11. Plaintiffs have failed to meet their burden under I.C. Sec. 34–13–5, *et seq.*, to produce sufficient evidence to demonstrate the existence of a substantial question that the actions and procedures set out in the Resolution are contrary to Indiana Statute,

■ Yet another challenged finding[9] is that a delay will increase the significant anticipated cost of renovating Mercy Hospital. (Appellants' Br. at 11.) Mayor King testified at the August 18th hearing that $15 million would be allocated to the hospital renovation. A civil engineer with knowledge of the construction industry in the northwest Indiana and Chicago area testified that the annual rate of construction cost inflation in that area is five percent. The evidence supports both this finding and the challenged finding[10] that a one-year project delay could increase the $47 million cost (all of which is for construction, per the affidavit of Gary Deputy Mayor Suzette Raggs) by $2.35 million. (R. at 85.)

Finally, plaintiffs challenge the finding[11] that a delay due to the lawsuit puts the

> the Indiana State or United States Constitutions or the Separation of Powers Doctrine as it applies to Indiana cities. . . .
> (R. at 198.)

8. This reads:
> 10. Two of the four councilpersons that voted against [the resolution] filed this suit in Lake Superior Court Room II. The existence of this action delays the bond issuance and blocks the Project.
> (R. at 198.)

9. This reads:
> 12. A substantial part of the bond proceeds will be used to renovate and remodel the former Mercy Hospital building into a police and public safety facility. Any delay in this project will increase the costs of this renovation and remodeling due to increased construction costs as a result of inflation within the construction market.
> (R. at 198.)

10. This reads:
> 23. All of the estimated $47 million cost of the Project . . . are for construction costs. In light of a five-percent per annum increase in construction costs due to inflation within the construction industry, a delay of one year in the Project will; result in an increase of $2,350,000.00, to the Project.
> (R. at 200.)

11. This reads:
> 21. The renovation of the Genesis Center is part of a contractual commitment by

City at risk of failing to meet certain contractual commitments. This finding is supported by the testimony of Mayor King, (R. at 444–46), the testimony of the investment banker, (R. at 406), and an affidavit by Deputy Mayor Raggs, (R. at 84).

In summary, the trial court's findings of fact are not clearly erroneous.

### Conclusion

We affirm the trial court order requiring the plaintiffs to post bond, and its subsequent order dismissing this action with prejudice.

DICKSON, SULLIVAN, and BOEHM, JJ., concur.

RUCKER, J., concurs with separate opinion, in which SULLIVAN, J., joins.

RUCKER, Justice, concurring

In an expedited hearing before the trial court, Gary City Councilmen Charles Hughes and Alex Cherry ("Councilmen") raised a number of concerns that they contended presented substantial questions to be tried. For example they argued that by mandating that the City of Gary pledge gaming tax revenues to the Mayor, the resolution violated Ind.Code § 5–1–14–4; that by granting the Mayor the exclusive right to control all gaming tax revenues to the exclusion of the Gary City Council, the resolution violated Article 3 Section 1 of the Indiana Constitution; that because the bonds are not payable solely from and secured by a lien upon the revenues of the facilities being financed, the resolution violated Ind.Code § 13–21–8 et seq.; that the resolution is unconstitutionally overbroad because it prohibits the Gary City Council from taking legislative action to amend or repeal the resolution; and that the resolution impairs the contract rights of the City of Gary under certain agreements between Trump Indiana, Inc. and Majestic Star Casino that provide for the rehabilitation of the Sheraton Hotel and Union Station in downtown Gary. R. at 353–56.

Without commenting on the strength or validity of these arguments, I note they have not been presented to this Court on appeal. Instead, the "substantial question" claim presented here is addressed solely to two contentions: (1) that the resolution is invalid because the June 27, 2000 meeting was not properly convened; and, (2) that the Gary City Council improperly delegated to the Mayor the power to appropriate the bond proceeds "without restriction, or indication in a discernable manner, the amount of the proceeds to be allocated for each project or a method of ascertaining a maximum that may be used for each project, or who shall make the expenditures." Brief of Appellant at 14–15.

I fully concur with the majority that the record does not support the proposition that the June 27 meeting was improperly convened. I also agree that the two cases cited in the Brief of Appellant do not support Councilmen's claim that the Gary City Council overstepped its statutory authority.[12] However, I write separately to explore in greater detail the question of

---

Gary to the Continental Basketball Association ("CBA") that the Center will be renovated and upgraded to certain standards and capacity so that the new CBA team's home games can be played at the Genesis Center. Also, the renovations to the Center are required of Gary because of its contractual commitments to the promoters of the Miss U.S.A. Pageant, which will be held in Gary for the next three years. This lawsuit blocks the Project from proceeding and risks the City's failure to meet these contractual commitments.

(R. at 200.)

12. The cases cited are: *Park Hill Dev. Co. v. City of Evansville,* 190 Ind. 432, 130 N.E. 645 (1921) (invalidating a city ordinance regulating cemeteries because it attempted to confer upon certain city officials the arbitrary power to approve or disapprove cemetery plats for any reason officials might choose); and *City of Elkhart v. Murray,* 165 Ind. 304, 75 N.E. 593 (1905) (voiding a city ordinance that required street cars to be equipped with particular fenders because the ordinance was not uniform and was arbitrarily discriminatory).

whether Councilmen presented a substantial question on this latter point.

Relevant case authority does not make clear what is meant by a "substantial question" in the context of a public lawsuit. The public lawsuit statute itself requires the posting of a bond where "the court determines that the plaintiff cannot establish facts that would entitle the plaintiff to a temporary injunction." Ind.Code § 34–13–5–7. We have held that in seeking a temporary injunction a plaintiff is required to present evidence that:

> (1) the question to be tried was a substantial one, proper for investigation by a court of equity. It is not necessary that such a case should be made out as would entitle appellants to relief on the final hearing; (2) the status quo should be maintained until the final hearing or appellants will certainly be injured irreparably before a trial on the merits can be had; (3) there is no adequate remedy at law; and, (4) any damages to the appellants may be adequately indemnified by the bond posted by the plaintiff.

*Johnson v. Tipton Comty. Sch. Corp.*, 253 Ind. 460, 464–65, 255 N.E.2d 92, 94 (1970). However, in a public lawsuit where the plaintiff is not seeking a temporary injunction, only the first element is applicable. *Id.*

Unlike *Johnson*, here the plaintiffs were seeking a temporary injunction. Indeed the record shows that Councilmen sought temporary as well as permanent injunctive relief. R. at 24–25. Thus, it appears that not only were Councilmen required to show the existence of a substantial question, but also the remaining elements for a temporary injunction as well. *Johnson*, 253 Ind. at 464, 255 N.E.2d at 94. In any event, the question remains what is meant by a "substantial question."

Not since *Johnson* has this Court identified the factors necessary for obtaining a temporary injunction. However, those factors have evolved over the years. As a result of a long line of cases from the Court of Appeals, it appears that the propriety of issuing a temporary injunction is now generally measured by the following: (1) whether plaintiff's remedy at law is inadequate thus causing irreparable harm pending the resolution of the substantive action if the injunction does not issue; (2) whether plaintiff has demonstrated a reasonable likelihood of success at trial by establishing a prima facie case; (3) whether the threatened injury to the plaintiff outweighs the threatened harm that the grant of the injunction may inflict on the defendant; and (4) whether by the grant of the preliminary injunction the public interest would be disserved. *See, e.g., Daugherty v. Allen*, 729 N.E.2d 228, 232–33 (Ind.Ct.App.2000); *Union Twp. Sch. Corp. v. State ex rel. Joyce*, 706 N.E.2d 183, 189 (Ind.Ct.App.1998), *trans. denied; Reilly v. Daly*, 666 N.E.2d 439, 443 (Ind. Ct.App.1996); *Indiana State Bd. of Pub. Welfare v. Tioga Pines Living Ctr., Inc.*, 637 N.E.2d 1306, 1311 (Ind.Ct.App.1994); *College Life Ins. Co. of Am. v. Austin*, 466 N.E.2d 738, 741 (Ind.Ct.App.1984); *Indiana Pacers L.P. v. Leonard*, 436 N.E.2d 315, 318 (Ind.Ct.App.1982); *Rees v. Panhandle E. Pipe Line Co.*, 176 Ind.App. 597, 377 N.E.2d 640, 646–48 (1978).

Although the requirements for obtaining a temporary injunction as set forth in *Johnson* are stated somewhat differently than those recited above, they still advance the same general idea: maintaining the status quo until the case can be heard on the merits. Importantly, the "reasonable likelihood of success at trial" language parallels the "substantial question" language in *Johnson*. As *Johnson* points out "[i]t is not necessary that such a case should be made out as would entitle appellants to relief on the final hearing." *Johnson*, 253 Ind. at 464, 255 N.E.2d at 94. This is similar to the requirement that a plaintiff show a reasonable likelihood of success at trial "by establishing a prima facie case." *See, e.g., Sch. City of Gary v. Cont'l Elec. Co.*, 149 Ind.App. 416, 273 N.E.2d 293 (1971) (indicating that to obtain a tempo-

rary injunction, it is necessary only that the pleadings and evidence be such that they make out a case for proper investigation by a court of equity and that the status quo will be maintained pending trial).

In this appeal, Councilmen essentially argue that Resolution 2736 is invalid because it lacks detail concerning (i) the amount of money to be spent on each of the public works improvements; and (ii) who will be responsible for making the expenditures. According to Councilmen, these are substantial issues to be tried, and thus they should not have been required to post bond nor should their lawsuit have been dismissed. In the context of what now appears to be the law of this State, it may be stated differently that Councilmen contend they presented sufficient evidence of a prima facie case and thus demonstrated a reasonable likelihood of success on the merits at trial. As explained below, Councilmen have not carried their burden.

Although a legislative body may not delegate its lawmaking authority to another branch of government, "the power and authority to administer legislative enactments may be and necessarily are delegated to various boards, bodies and commissions." *Y.A. by Fleener v. Bayh*, 657 N.E.2d 410, 415 (Ind.Ct.App.1995). The only limitation on the delegation of authority is that reasonable standards be established to guide the entity to which the authority has been delegated. *Indiana Dep't of Envtl. Mgmt. v. Chem. Waste Mgmt., Inc.*, 643 N.E.2d 331, 340 (Ind. 1994). However, those standards need only be "as specific as the circumstances permit, considering the purpose to be accomplished by the statute." *Id.* (quoting

*Barco Beverage v. Alcoholic Beverage Comm'n*, 595 N.E.2d 250, 254 (Ind.1992)).

By enacting Resolution 2736,[13] the Gary City Council did not delegate to the executive branch its lawmaking authority. Rather, the Council delegated its authority to administer the terms and conditions of the resolution—a legislative enactment. The Council is invested with this authority and the propriety of so doing is not subject to judicial scrutiny.[14] *See, e.g., Dvorak v. City of Bloomington*, 702 N.E.2d 1121, 1125 (Ind.Ct.App.1998) (holding that a city ordinance was not unconstitutional simply because the court might consider it born of unwise, undesirable, or ineffectual policies). The critical inquiry here is whether the resolution contained reasonable standards specific enough to accomplish the purposes for which the resolution was enacted.

By its express terms the purpose of Resolution 2736 is to provide a pledge of gaming revenues to secure payment of bonds for various public works projects. The General Assembly has expressly authorized the pledge of gaming revenue for such purposes. *See* Ind.Code § 4–33–12–6(d)(3) (providing in part that the taxes on gaming boat admissions that are paid to a local government "may be used for any legal or corporate purpose of the unit, including the pledge of money to bonds, leases, or other obligations...."); Ind. Code § 4–33–13–6(a)(3) (providing in part that wagering taxes that are paid to a local government also "may be used for any legal or corporate purpose of the unit, including the pledge of money to bonds, leases or other obligations...."). The General Assembly also has expressly authorized a city's legislative body to "pass ordinances, orders, resolutions, and mo-

---

**13.** The terms "resolution" and "ordinance" are frequently used interchangeably, and an ordinance merely connotes a more formal and solemn declaration. *Town of Walkerton v. New York, Chi. & St. Louis R.R. Co.*, 215 Ind. 206, 18 N.E.2d 799 (1939). No issue has been raised in this appeal concerning how these terms are used.

**14.** And this is so even though a number of Gary residents apparently have expressed "outrage" at the proposed expenditure of city revenue for, among other things, constructing and equipping a professional baseball stadium. R. at 113.

tions for the government of the city, the control of the city's property and finances, and the appropriation of money." Ind. Code § 36–4–6–18.

As Councilmen correctly point out Resolution 2736 contains neither details about the amount of money to be spent on specific projects nor who will actually spend the money. However, my research has revealed no authority that such specificity is required. To the contrary in at least one case, the Court of Appeals declined to declare an appropriations ordinance invalid even though it failed to define or itemize the costs for a new city hall. *Blinn v. City of Marion*, 181 Ind.App. 87, 390 N.E.2d 1066, 1072 (1979). Here the resolution contains a great deal of specificity as to how the pledge of gaming revenues will be accomplished. Nothing more is required.

Based on the contentions Councilmen present in this appeal namely, that Resolution 2736 is invalid because it lacks certain details, Councilmen have not established facts that would entitle them to a temporary injunction. More specifically they have not put forth a prima facie case demonstrating a reasonable likelihood of success at a trial on the merits. Accordingly, the trial court properly required Councilmen to post a bond and thereafter properly dismissed this action when a bond was not posted. For the reasons set forth I therefore concur in the majority opinion.

SULLIVAN, J., concurs.