**RILEY AT JACKSON REMONSTRANCE GROUP, a non-profit corporation, Joanna Blacketor, and Judith Overmyer, Tax Appellants,**

v.

**STATE BOARD OF TAX COMMISSIONERS, Respondent,**

and

**South Bend Community School Corporation and Riley School Building Corporation, Real Parties in Interest.**

No. 71T10–9510–TA–00112.

Tax Court of Indiana.

March 28, 1996.

John C. Hamilton, Doran Blackmond Ready Hamilton & Williams, South Bend, for Tax Appellants.

Pamela Carter, Attorney General, Marilyn S. Meighen, Deputy Attorney General, Indianapolis, for Respondent State Board of Tax Commissioners.

J.B. King, Baker & Daniels, Indianapolis, Thomas J. Brunner, Kari A. Gallagher, Baker & Daniels, South Bend, for Respondent School Corporation and School Building Corporation.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

FISHER, Judge.

### STATEMENT OF THE CASE

Tax Appellants, Riley at Jackson Remonstrance Group, Joanna Blacketor, and Judith Overmyer (collectively the Remonstrance Group), appeal the October 4, 1995, final determination of the State Board of Tax Commissioners (the State Board) approving a lease rental agreement between the South Bend Community School Corporation and the Riley School Building Corporation (collectively the School Corporation) for the construction of a new school. The Remonstrance Group alleges that because the School Corporation failed to hold a new hearing under IND. CODE 20-5-52-2(a) before proceeding under IND. CODE 21-5-11-7(a) and (b), the lease rental agreement is invalid. The Remonstrance Group further alleges that because the lease rental agreement is invalid, the State Board had no authority to approve it. The matter is now before the court on cross motions for summary judgment.

## ISSUE

Whether the State Board erred in deferring to a letter issued by the Director of the Indiana Department of Education's Division of School Facility Planning indicating that the School Corporation was not required to hold a new hearing under I.C. 20–5–52–2(a) before proceeding under I.C. 21–5–11–7(a) and (b).

## FACTS & PROCEDURAL HISTORY

On August 31, 1992, and November 2, 1992, the School Corporation held public hearings in accord with I.C. 20–5–52–2(a) ("1028" hearings) [1] at which plans to construct a new Riley High School and to renovate the Jackson Middle School were discussed. After these hearings, the School Corporation decided to go forward with its plans and eventually submitted one lease rental agreement covering both the Riley High School construction project and the Jackson Middle School renovation project to the public for consideration in accord with I.C. 21–5–11–7(a) and (b).

Dissatisfied with the School Corporation's lease rental agreement, the Remonstrance Group took an appeal to the State Board under I.C. 21–5–11–7(c). The State Board held a hearing to consider the Remonstrance Group's claims and on June 11, 1994, issued an order stating that "[w]hile it appears that the Jackson portion of the project was not necessary, the Riley portion of the project is necessary...." *Riley at Jackson Remonstrance Group v. State Bd. of Tax Comm'rs*, 642 N.E.2d 562, 565 (Ind. Tax 1994) (quoting *State Board's July 11, 1994, Findings and Order*) (emphasis omitted). Thereafter, the School Corporation excised all references to the Jackson Middle School renovation project from the lease rental agreement and began to proceed with its plans to construct a new

Riley High School. The Remonstrance Group, however, filed an original tax appeal with this court protesting the State Board's action on the lease rental agreement.

In October 1994, the Remonstrance Group, the School Corporation, and the State Board appeared before this court and made their respective arguments about the propriety of the State Board's action. On November 10, 1994, this court upheld the State Board's action, but stated that the School Corporation could not proceed to build a new Riley High School unless a new lease rental agreement was drafted. *Id.* at 566. The court also stated that the new lease rental agreement would require a new public hearing in accord with I.C. 21–5–11–7(a) and (b) and an opportunity for a new remonstrance under I.C. 21–5–11–7(c). *Id.*

In response to this court's ruling, the School Corporation drafted a new lease rental agreement. It was uncertain, however, how to proceed with the new lease rental agreement. Specifically, the School Corporation was uncertain whether it would be sufficient to submit the new lease rental agreement directly to the process prescribed by I.C. 21–5–11–7(a) and (b), or whether it was first required to hold another "1028" hearing under I.C. 20–5–52–2(a). Consequently, the School Corporation sent a letter to the Director of the Indiana Department of Education's Division of School Facility Planning (the Director) inquiring whether, under the circumstances, the School Corporation was required to hold a new "1028" hearing. The Director replied via a letter dated December 27, 1994, that a new "1028" hearing was not required.

Based on the Director's letter, the School Corporation submitted the new lease rental agreement directly to the process prescribed

---

**1.** The public hearing required by I.C. 20–5–52–2(a) is called a "1028" hearing because it came to be law via House Bill 1028. *See* 1982 Ind. Acts, P.L. 128 SEC. 2. I.C. 20–5–52–2(a) provides:

If the governing body [of a school corporation] proposes to construct, repair, or alter a school building at a cost of more than one million dollars ($1,000,000), that would be financed by:
    (1) entering into a lease agreement under IC 21–5–11–7 or IC 21–5–12–7;

    (2) issuing bonds under IC 20–5–4; or
    (3) any other available method;
it must hold a *public hearing* at which explanations of the potential value of the proposed project to the school corporation and to the community shall be given, and at which interested parties may present testimony and questions.
(Emphasis added).

by I.C. 21–5–11–7(a) and (b). Thereafter, the Remonstrance Group took a second remonstrance to the State Board under I.C. 21–5–11–7(c). As required by law, the State Board held a hearing to consider the Remonstrance Group's claims.

At the hearing, the Remonstrance Group argued that the School Corporation was required to hold a new "1028" hearing before it could proceed under I.C. 21–5–11–7(a) and (b) and that its failure to do so rendered the lease rental agreement invalid. The Remonstrance Group further argued that because the lease rental agreement was invalid, the State Board had no authority to approve it.

In its defense, the School Corporation submitted to the State Board the Director's letter stating that a new "1028" hearing was not required. The letter, the School Corporation argued, established that there was no procedural defect which prevented the State Board from approving the lease.

After considering the evidence and arguments presented by both parties, the State Board approved the new lease rental agreement in an order dated October 4, 1995. The State Board's October 4, 1995, order suggests that the State Board believed responsibility for determining compliance with I.C. 20–5–52–2(a) (i.e. whether a proper "1028" hearing had been held) rested with the Indiana Department of Education and that the State Board was obligated to defer to the Director's letter stating that the School Corporation was not required to hold a new "1028" hearing. *See State Board's October 4, 1994 Findings and Order* at 4, ¶ 10.

The Remonstrance Group filed this original tax appeal on October 9, 1995. Two days later, the Remonstrance Group filed a motion for judgment on the pleadings, which the court converted to a motion for summary judgment. *Riley at Jackson Remonstrance Group v. State Bd. of Tax Comm'rs,* Ind.Tax Court Cause No. 71T10–9510–TA–00112 (unpublished order filed on December 22, 1995). Thereafter, the School Corporation filed its own motion for summary judgment. The case is now before the court on the parties' cross motions for summary judgment.

### STANDARD OF REVIEW

■ Summary judgment will be granted "only when there is no genuine issue of material fact and a party is entitled to judgment as a matter of law." *Knauf Fiber Glass GmbH v. State Bd. of Tax Comm'rs,* 629 N.E.2d 959, 960 (Ind.Tax.1994). Cross motions for summary judgment do not alter this rule. *Roehl Transport, Inc. v. Indiana Dep't of State Revenue,* 653 N.E.2d 539, 541 (Ind. Tax 1995).

### DISCUSSION & ANALYSIS

■ Inherently involved in the issue of whether the State Board erred in deferring to the Director's letter is the question of whether the Indiana Department of Education or the State Board is responsible for determining compliance with. I.C. 20–5–52–2(a) (i.e. whether a proper "1028" hearing has been held). If responsibility for determining compliance with I.C. 20–5–52–2(a) rests with the Indiana Department of Education, then the State Board properly deferred to the Director's letter. *See Bell v. State Bd. of Tax Comm'rs,* 651 N.E.2d 816 (Ind.Tax 1995).[2] If, however, responsibility for deter-

---

2. The Remonstrance Group relies on *Bell* for the proposition that even if the responsibility for determining whether a proper "1028" hearing has been held lies with the Indiana Department of Education, the State Board still improperly relied on the Director's letter because the letter did not constitute a "final determination" appealable to a court of record under the Administrative Orders and Procedures Act.

It is outside the jurisdiction of this court to decide whether the Director's letter constituted a "final determination" of the Indiana Department of Education. *See* IND.CODE 33–3–5–2. In any event, it really makes no difference. *Bell* did not

hold that the State Board is only entitled to rely on the decisions of other agencies which constitute "final determinations." *Bell* held that when an official document (which may or may not be a "final determination") prepared by a state administrative agency is offered as evidence to the State Board, the State Board may presume that the official document was promulgated in accord with Indiana law. *Bell,* 651 N.E.2d at 820. Accordingly, *Bell* recognized that the State Board has no authority to "second guess" decisions properly committed to other state agencies, regardless of whether those decisions constitute "final determinations" or not.

mining compliance with I.C. 20–5–52–2(a) rests with the State Board, then the State Board erred by failing to make an independent judgment about whether a proper "1028" hearing had been held.

Given the context and subject matter of I.C. 20–5–52–2(a), there is no doubt that either the State Board or the Indiana Department of Education, not some other administrative agency, has responsibility for determining whether a proper "1028" hearing has been held. The statute is silent, however, as to which of those two agencies is specifically given that responsibility.

Because of the statute's silence, the State Board and the Indiana Department of Education issued a joint memorandum stating that the Indiana Department of Education's Division of Accreditation and Facility Planning would be responsible for determining compliance with House Bill 1028's public hearing requirement. That joint memorandum provides:

> After a review of the legal responsibilities of the [Indiana] Department of [Education] and the State Board of Tax Commissioners with respect to the school facility planning process, it is the opinion of these agencies that some adjustments must be made to the existing planning procedure in order to absorb the provisions of H.B. 1028 into that system. *The purpose of this memorandum, therefore, is to outline the functions of both agencies in the implementation of H.B. 1028.*
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> *The [Indiana Department of Education's] Division of Accreditation and Facility Planning will assume the responsibility for determining compliance with the provisions of H.B. 1028 relative to the public hearing and the Resolution by the governing body of the school corporation.*

*April 30, 1982 Joint Memorandum* (Attached as Exhibit I to School Corporation's Memorandum in Support of Motion to Dismiss) (emphases added). The joint memorandum evidences the agencies' joint interpretation of I.C. 20–5–52–2 as placing responsibility for determining whether a proper "1028" hearing has been held on the Indiana Department of Education.

■ Indiana courts pay great deference to the reasonable interpretation of a silent or ambiguous statute by the agency charged with administering it. *Indiana Dep't of Natural Resources v. Krantz Brothers Construction Corp.*, 581 N.E.2d 935, 939 (Ind.App. 1991). The court finds no reason to pay less deference to the joint interpretation of a statute by two agencies where: 1) the statute is silent or ambiguous with respect to which of the two agencies is charged with administering it, and 2) the two agencies reasonably interpret the statute as giving one of them authority to administer it. Accordingly, the court finds that the State Board and Indiana Department of Education's joint interpretation of I.C. 20–5–52–2 is entitled to deference.

■ Moreover, "a long adhered-to administrative interpretation [of a statute] dating from the legislative enactment, with no subsequent change having been made in the statute involved, raises a presumption of legislative acquiescence which is strongly persuasive upon the courts." *Indiana Dep't of State Revenue v. Glendale–Glenbrook Assoc.*, 429 N.E.2d 217, 219 (Ind.1981). Here, a presumption arises that the legislature has acquiesced in the agencies' interpretation of I.C. 20–5–52–2 because: 1) the joint memorandum was issued just two months after I.C. 20–5–52–2 became effective, and 2), in the fourteen years that I.C. 20–5–52–2 has been existence, the legislature has taken no action to change or amend it.

### CONCLUSION

Given the court's deference to the agencies' interpretation of I.C. 20–5–52–2 and the

presumption of legislative acquiescence in the agencies' interpretation of I.C. 20–5–52–2, the court holds that the State Board did not err in deferring to the Director's letter. The State Board's October 4, 1995 order is thus AFFIRMED. Summary judgment is en-

tered in favor of the State Board and the School Corporation.[3]

3. The court is mindful of the history of this litigation and the rancorous debate that has occurred. It is not, however, the function of this court to decide whether the Riley High School construction project is a good idea, a bad idea, or in the best interests of the citizens and stu- dents concerned. This court can decide only whether the State Board in acting pursuant to I.C. 21–5–11–7(c) functioned according to law.