**Chester BELL, John Bradshaw, Della Bicking, Petitioners,**

v.

**STATE BOARD OF TAX COMMISSIONERS,**
**Respondent.**

**No. 49T10–9504–TA–00036.**

Tax Court of Indiana.

June 14, 1995.

---

Nelson G. Grills, Indianapolis, for petitioner.

Pamela Carter, Indiana Atty. Gen. and Joel Schiff, Deputy Atty. Gen., Indianapolis, for respondent State Bd. of Tax Com'rs.

Jeffrey A. Boyll, Wilkinson, Goeller, Modesitt, Wilkinson & Drummy, Terre Haute, for respondent Clay Community Schools.

## ORDER ON MOTION FOR JUDGMENT ON THE PLEADINGS AND MOTION TO POST BOND

FISHER, Judge.

On April 13, 1995, the State Board of Tax Commissioners (State Board) approved a lease rental agreement between Clay Community Schools and the North Clay Middle School Building Corporation for the construction of a new middle school. Chester Bell, John Bradshaw, and Della Bicking (the Remonstrators) now appeal the State Board's action.

### ISSUES

I. Whether the State Board must inquire into the propriety of actions taken by school corporations, the Indiana Department of Education, and the State Board of Education and find that those agencies complied with Indiana law governing school construction projects before it may approve a lease rental agreement under IND.CODE 21-5-12-7.

II. Whether the Remonstrators must post bond in an amount to cover all damages and costs which may accrue

to Clay Community Schools in the event that Clay Community Schools should prevail in this lawsuit.

## FACTS AND PROCEDURAL HISTORY

On November 2, 1994, Clay Community Schools and the North Clay Middle School Building Corporation entered into a lease rental agreement for the construction of a new middle school.[1] A number of taxpayers, including the Remonstrators, filed a remonstrance challenging the lease rental agreement because: 1) it was not necessary, and 2) the rental payments were neither fair nor reasonable. On January 13, 1995, the State Board conducted a hearing to consider the remonstrance and then referred the lease rental agreement to the School Property Tax Control Board for its review and recommendation. On March 16, 1995, the School Property Tax Control Board recommended that the State Board approve the lease rental agreement. Thereafter, the State Board toured the North Clay Junior High School, the Clay City Junior/Senior High School, and the Jackson Elementary School. Then, on April 13, 1995, the State Board approved the lease rental agreement.

The Remonstrators filed this appeal on April 21, 1995. In response, Clay Community Schools filed: 1) a motion to intervene as a party defendant, 2) a motion to declare the case a public lawsuit, and 3) a motion to require the Remonstrators to post bond. In an order dated May 3, 1995, the court granted Clay Community Schools' motion to intervene as a party defendant. On May 9, 1995, the Remonstrators filed a motion for judgment on the pleadings. The court held a hearing to consider the parties' motions on May 22, 1995.

The Remonstrators do not contest that this case is a public lawsuit under IND.CODE 34-4-17-1(b), and the court has previously found that the case is a public lawsuit. Therefore, this order will address Clay Community Schools' motion to require the Remonstrators to post bond and the Remonstrators' motion for judgment on the plead-

ings only. If the Remonstrators are successful on their motion for judgment on the pleadings, the Clay Community Schools' motion to require the Remonstrators to post bond becomes moot. *See Ackelmire v. North Vermillion Community School Corp.* (1990), Ind.Tax, 558 N.E.2d 916, 922. Accordingly, the court will address the Remonstrators' motion for judgment on the pleadings first.

### I

A motion for judgment on the pleadings is appropriate when the pleadings present no material issues of fact and the facts shown by the pleadings clearly entitle a party to judgment. *Riley at Jackson Remonstrance Group v. State Bd. of Tax Comm'rs* (1994), Ind.Tax, 642 N.E.2d 562, 565.

The Remonstrators' motion for judgment on the pleadings is based on I.C. 21-5-12-7. It provides that after the execution of a lease rental agreement is authorized:

Ten (10) or more taxpayers in [a] school corporation or corporations, who will be affected by the proposed lease and who may be of the opinion that no necessity exists for the execution of such lease, or that the proposed rental provided for therein is not a fair and reasonable rental, may file a petition in the office of the county auditor of the county in which such school corporation or corporations is located, ... setting forth their objections thereto and facts showing that the execution of the lease is unnecessary or unwise, or that the lease rental is not fair and reasonable as the case may be. Upon the filing of any such petition, the county auditor shall immediately certify a copy thereof ... to the state board of tax commissioners.... The decision of the state board of tax commissioners on such appeal, upon the necessity for the execution of said lease and as to whether the rental is fair and reasonable, shall be final.

I.C. 21-5-12-7(b). The Remonstrators maintain that I.C. 21-5-12-7 requires the State Board to inquire into the propriety of actions

---

1. The new middle school is intended to replace the North Clay Junior High School (also referred to as the Van Buren Middle School).

taken by school corporations, the Indiana Department of Education, and the State Board of Education. They further maintain that if, upon such inquiry, the State Board finds that a school corporation, the Indiana Department of Education, or the State Board of Education did not comply with Indiana law governing school construction projects, the State Board may not approve a lease rental agreement. Accordingly, the Remonstrators argue that they are entitled to judgment on the pleadings because: 1) the State Board failed to conduct an inquiry into whether Clay Community Schools, the Indiana Department of Education, and the State Board of Education complied with Indiana law governing school construction projects; and 2) if the State Board had conducted such an inquiry, it would have found that:

  a) The feasibility study upon which the middle school construction project is based, *Remonstrators' Exhibit 2, Part I* (attached to complaint), does not include a discussion of "future education program needs" as required by State Board of Education regulation 511 I.A.C. 2–2–1(B)(1)(e).

  b) The feasibility study, *Remonstrators' Exhibit 2, Part I* (attached to complaint), and the Steering Committee Report, *Remonstrators' Exhibit 3* (attached to complaint), do not provide "educational specifications to determine the quality of the educational program" as required by State Board of Education regulation 511 I.A.C. 2–21(B)(2).

  c) The Clay Community Schools did not give the local community an opportunity to study the need for a new middle school as required by State Board of Education regulation 511 I.A.C. 2–2–1(A)(1).

  d) The State Board of Education never adopted any regulations to implement the requirements of IND.CODE 20–1.1–6.1.

  e) The Indiana Department of Education's approval of the final plans for the construction of the new middle school was ineffective because it was signed in the name of the Superintendent of Instruction by one of her employees and not by the Superintendent of Public Instruction herself in violation of State Board of Education regulation 511 I.A.C. 2–2–1(C)(2)(a).

  f) The State Board of Education never approved the final plans for the construction of the new middle school as required by State Board of Education regulation 511 I.A.C. 2–2–1(C)(2)(e) [*sic*].

  g) Clay Community Schools did not obtain the permit required by State Board of Education regulation 511 I.A.C. 2–3–2.

*See Remonstrators' Motion for Judgment on the Pleadings* at 3–5.

██ In determining whether I.C. 21–5–12–7 requires the State Board to inquire into the propriety of actions taken by school corporations, the Indiana Department of Education, and the State Board of Education, the court notes that "an administrative agency has only those powers conferred on it by the General Assembly; powers not in its legislative grant cannot be assumed by the agency nor implied to exist in its powers." *Fort Wayne Education Association, Inc. v. Aldrich* (1988), Ind.App. 527 N.E.2d 201, 216. The court also notes that "no administrative agency has the prerogative to make decisions properly committed to any other agency." *Auburn Foundry, Inc. v. State Bd. of Tax Comm'rs* (1994), Ind.Tax, 628 N.E.2d 1260, 1263 (citations omitted); *Miller v. Gibson County Solid Waste Management District* (1993), Ind.Tax, 622 N.E.2d 248, 259–260.

"The State Board is Indiana's property tax specialist." *Miller*, 622 N.E.2d at 260. It has no expertise in educational matters. While I.C. 21–5–12–7 does authorize the State Board to determine whether a lease rental agreement between a lessor corporation and a school corporation is necessary and whether the rental payments are fair and reasonable, the purpose of I.C. 21–5–12–7 is not to require the State Board to determine whether a school construction project is necessary from an *educational standpoint*. That determination has been specifically delegated to the Indiana Department of Education and the State Board of Education under Title 20 of the Indiana Code. The purpose of I.C. 21–5–12–7 is to require the

State Board to determine whether a lease rental agreement is necessary and whether the rental payments are fair and reasonable from a *tax standpoint.*

■ The State Board is vested with broad discretion in the exercise of its powers and the performance of its duties. *Id.* In performing its duties under I.C. 21–5–12–7, the State Board may thus consider any evidence that it finds helpful, including documentation of relevant decisions made by the Indiana Department of Education, the State Board of Education, and other administrative agencies. Moreover, when an official document prepared by an administrative agency is offered as evidence to the State Board, the State Board may presume that the official document was promulgated in accord with Indiana law, for "[a]gency action is entitled to a presumption of regularity." 1 Charles H. Koch, Jr., *Administrative Law and Practice* § 1.28 (1985) (1995 pocket part).[2] Indeed, if administrative agencies were not entitled to presume that the actions of other administrative agencies were in accord with Indiana law, there would be wasteful duplication of effort in the work assigned to agencies. *See* Koch *supra* § 1.28 (main volume). In addition, non-expert administrative agencies would pass judgment on decisions made by expert agencies, thereby circumventing the reason for creating expert agencies in the first place. *See id.*

I.C. 21–5–12–7 does not make the State Board the guarantor that school corporations, the Indiana Department of Education, and/or the State Board of Education follow their own rules and regulations. Accordingly, the State Board was not required to review the actions of Clay Community Schools, the Indiana Department of Education, and the State Board of Education to determine whether they had complied with various State Board of Education regulations. It is unnecessary, and even inappropriate, therefore, for this court to explore the substance of the Remonstrators' claims. *See* IND. CODE 33–3–5–2. If the Remonstrators believe that Clay Community Schools, the Indiana Department of Education, or the State Board of Education violated Indiana law governing school construction projects, IND.CODE 4–21.5–5–1 *et seq.* provides an opportunity to be heard in a court of general jurisdiction.[3]

## II

■ Clay Community Schools request that the Remonstrators be ordered to post bond pursuant to IND.CODE 34–4–17–5. That statute provides, in relevant part:

At any time prior to the final hearing in [a] public lawsuit, the defendant may petition for an order of the court that the cause be dismissed unless the plaintiff shall post a bond with surety to be approved by the court payable to defendant for the payment of all damages and costs which may accrue by reason of the filing of the lawsuit in the event the defendant prevails. A hearing shall be had on such petition in the same manner as the hearing on temporary injunctions under I.C. 34–1. If at the hearing the court determines that the plaintiff cannot establish facts which would entitle him to a temporary injunction, the court shall set the amount of bond to be filed by the plaintiff in an amount found by the judge to cover all damage and costs which may accrue to the defendants by reason of the pendency of the public lawsuit in the event the defendant prevails.

I.C. 34–4–17–5.

■ Ordinarily, a plaintiff who seeks a temporary injunction must present evidence to the trial court to show that:

(1) the question to be tried [is] a substantial one, proper for investigation by a court of equity. It is not necessary that such a case should be made out as would entitle [the plaintiff] to relief on the final hearing; (2) the status quo should be maintained

---

**2.** Of course, the presumption of regularity does not prevent the *proper* reviewing court from examining the propriety of the agency action. *Id.*

**3.** The Remonstrators' motion for judgment on the pleadings indicates that they pursued an appeal from a final determination issued by the State Board of Education in the Marion Superior Court. *Remonstrators' Motion for Judgment on the Pleadings* at 2. That appeal, however, was dismissed on March 20, 1995. *Remonstrators' Motion for Judgment on the Pleadings* at 2.

until the final hearing or [the plaintiff] will certainly be injured irreparably before a trial on the merits can be had; (3) there is no adequate remedy at law; and, (4) any damages to the [defendant] may be adequately indemnified by the bond posted by the plaintiff.

*Johnson v. Tipton Community School Corp.* (1970), 253 Ind. 460, 464, 255 N.E.2d 92, 94 (citations omitted). In a public lawsuit, however, the plaintiff is not actually seeking a temporary injunction; the plaintiff is seeking to avoid posting a bond. Because of this anomaly,

some of [the] requirements [that must be met in order to obtain a temporary injunction] do not make sense and are not applicable. In fact, the only applicable requirement is the first one. The purpose of [the public lawsuit] is to protect the public against a flood of harassing litigation which obstructs and delays public improvement at prohibitive costs and from the financial damage of completely non-meritorious litigation. The requirement that the plaintiff must introduce evidence sufficient to show the trial court that there is a substantial question to be tried accomplishes those purposes adequately by eliminating merely harassing suits or completely non-meritorious litigation.

*Id.* at 464–65, 255 N.E.2d at 94 (emphasis added) (quotations and citations omitted). Thus, in order to avoid posting a bond, the Remonstrators must introduce evidence sufficient to show that there is a substantial question to be tried. *See id.*

### A. The Necessity of the Lease Rental Agreement

At the bond hearing, the parties agreed that the Clay Community Schools would present its evidence first. *Transcript* at 35–36. Accordingly, Clay Community Schools presented evidence that the North Clay Junior High School has outlived its usefulness as an educational facility and that a new middle school is necessary. The school was constructed in 1922. *Transcript* at 41. It was originally built to house 350 students, yet 625 students now attend the school. *Transcript* at 43. To accommodate the overcrowding

situation, a number of storage rooms, the stage in the gymnasium, and even some closets have been converted into classrooms. *Transcript* at 44; *Respondent's Exhibit B.* The school fails to comply with fire safety regulations, regulations governing the handicapped accessibility of buildings, and various educational standards established by the Indiana Department of Education. *Respondents' Exhibit C; Respondents' Exhibit D; Transcript* at 46, 129–137. The school does not have the electrical capacity to support modern computers or scientific lab equipment, and the restroom facilities are inadequate. *Transcript* at 43 & 46–47; *Respondents' Exhibit B.* It is unlikely that the building could be remodeled at all, and if an attempt were made to remodel the building, the cost of remodeling would exceed the cost of replacing it. *Transcript* at 128–131, 136–139. In addition, Clay Community Schools presented evidence that: 1) an extensive feasibility study was conducted to evaluate the need for a new middle school, 2) parents, teachers, and the community at large were consulted about the need for a new middle school, and 3) taxpayers were given numerous opportunities to express their views concerning the need for a new middle school. *Transcript* at 53–56; *Respondents' Exhibit A* at 4–12.

■ The Remonstrators presented no direct evidence or testimony to support their contention that a new middle school is not necessary. Instead, they relied on their complaint, their motion for judgment on the pleadings, and their cross examination of Clay Community Schools' witnesses. In their complaint, they note that the feasibility study upon which the proposed middle school is based states that the climate at North Clay Junior High School is "very positive" and that "students appear to be at ease and quickly adjust to scheduled classes and the shifting to different classrooms within the main structure, elementary school and other attention areas." *Complaint* at 6 (quoting *Petitioners' Exhibit 2, Part I* attached to complaint). This, they contend, raises a substantial question regarding the necessity of a new middle school. The fact that the school climate is very positive and that students

quickly adjust to various conditions does not, however, raise a substantial question regarding the necessity of a new middle school. It establishes only that the students make the best of the situation in which they find themselves. The Remonstrators' motion for judgment on the pleadings is of no assistance to them, either. As discussed in part I of this order, it raises issues which neither the State Board nor this court have the authority to consider. Finally, in their cross examination of Clay Community Schools' witnesses, the Remonstrators' suggested that Clay Community Schools could request a variance from the Indiana Department of Fire and Safety so that it would not have to remedy existing fire safety violations. *Transcript* at 139. They also suggested that handicapped students could be bussed to the Clay City Junior/Senior High School, which is handicapped accessible. *Transcript* at 144–145. These suggestions fail to establish that there is a substantial question that a new middle school is not necessary. Instead, they tend to establish that a new middle school is imperative, for they underscore the fact that the current conditions of the North Clay Junior High School put the health, safety and, perhaps even the lives, of students in jeopardy. Consequently, the Remonstrators have not established that there is a substantial question regarding the lease rental agreement's necessity.

### B. The Rental Payments

At the bond hearing, Clay Community Schools presented evidence that the rental payments provided for in the lease rental agreement are fair and reasonable. *Transcript* at 57. Specifically, Clay Community Schools presented evidence that it thoroughly considered the tax impact of the rental payments on the community. *Transcript* at 82. It explained that in order to avoid placing a significant tax burden on the taxpayers, it accumulated approximately $10,200,000 in its capital projects fund. *Transcript* at 57. It then refinanced some previously issued bonds and, as a result, acquired another $1,500,000. *Transcript* at 57–58. Consequently, it explained that it will need to finance only about $7,000,000 of the $18,909,-961 total construction cost. *Transcript* at 58,

63; *Respondents' Exhibit F*. Clay Community Schools also explained that while the rental payments on the new middle school will have a tax impact, taxes for the capital projects fund will be reduced because it will no longer be necessary to accumulate funds for the construction of a new middle school once a new middle school is built. *Transcript* at 63. Consequently, Clay Community Schools explains that any tax increase will be offset by a tax decrease. *Transcript* at 63, 67, 229.

The Remonstrators presented no direct evidence or testimony to support their contention that the rental payments provided in the lease rental agreement are unfair and unreasonable. Again, they relied on their complaint, their motion for judgment on the pleadings, and their cross examination of Clay Community Schools' witnesses. In their complaint, the Remonstrators assert that only 29 school corporations in Indiana have a higher school tax rate than Clay Community Schools. *Complaint* at 10; *Petitioners' Exhibit 2, Part II* (attached to complaint); *Transcript* at 83. This, they contend, establishes a substantial question that the rental payments provided for in the lease rental agreement are unfair and unreasonable. The fact that Clay Community Schools has a higher school tax rate than other school corporations, however, establishes merely that Clay Community Schools has a higher school tax rate than other school corporations. It does not establish that there is a substantial question that the rental payments are unfair and unreasonable. In their complaint, the Remonstrators' also assert that construction of the new middle school will cause Clay Community Schools' ratio of indebtedness to assessed valuation to exceed the recommended limit of 30 percent. *Complaint* at 9–10; *Petitioners' Exhibit 2, Part II; Transcript* at 85–86. Clay Community Schools, however, explained that the Remonstrators' assertion is based on 1992 figures and that more recent figures establish that the ratio of indebtedness to assessed valuation is well within the recommended limit at 26.6 percent. *Transcript* at 122–123. Perhaps most significant, however, is the fact that the Remonstrators presented no evi-

dence or testimony to refute Clay Community Schools' contention that the middle school construction project is expected to have little to no tax impact on the taxpayers. Consequently, the Remonstrators have not established that there is a substantial question that the rental payments are unfair and unreasonable.

### C. The Amount of Bond

Having found that there is no substantial question to be tried in this case, the court must now determine the amount of bond to be posted. Clay Community Schools' expert witnesses testified that Clay Community Schools can expect to incur additional costs in the amount of $1,099,071 if construction of the new middle school is delayed pending the outcome of this lawsuit. *Respondents' Exhibit E; Transcript* at 166; *Respondents' Exhibit G; Transcript* at 184–186. The Remonstrators presented no evidence contesting these estimates. Accordingly, the court finds that should Clay Community Schools prevail in this lawsuit, damages and costs may accrue to it in the total amount of $1,099,071.

### CONCLUSION

For the reasons stated above, the Remonstrators' motion for judgment on the pleadings is DENIED. In addition, the Remonstrators are ORDERED to post bond in the amount of $1,099,071 with sureties to be approved by the Court within ten (10) days from the date of this order. If bond is not so filed, this suit shall be dismissed pursuant to I.C. 34–4–17–5.