**Glen S. GRABER et al., Petitioners,**

v.

**STATE BOARD OF TAX COMMISSIONERS, Respondent,**

and

**North Daviess School Corporation, Intervenor.**

No. 49T10–0001–TA–1.

Tax Court of Indiana.

May 8, 2000.

Transfer Denied June 29, 2000.

Nelson G. Grills, Walker & Grills, Indianapolis, IN, Attorney for Petitioners.

Karen M. Freeman–Wilson, Attorney General of Indiana, Linda Villegas, Deputy Attorney General, Indianapolis, IN, Attorneys for Respondent.

Gary J. Dankert, Michael A. Wilkins, Ice Miller Donadio & Ryan, Indianapolis, IN, Attorneys for Intervenor.

FISHER, J.

Petitioners challenge the decision by the State Board of Tax Commissioners (State Board) approving a lease agreement for a new elementary school building between Intervenor North Daviess Community School Corporation (School Corporation), and the North Daviess School Building Corporation (Building Corporation) The sole issue for the Court's consideration is whether Petitioners must post bond in order to continue prosecuting this public lawsuit.

## FACTS AND PROCEDURAL HISTORY

The School Corporation serves five townships in Daviess County. Four of the townships contain towns.[1] Petitioners are residents and real property owners of these towns and the area served by the School Corporation. Some are parents of children attending the elementary schools within the School Corporation, including members of the Amish community.

Until 1995, the School Corporation operated four elementary schools in the area. In the fall of 1995, the Odon elementary school was closed due to health and safety concerns. After receiving the results of a community survey, the Board of Trustees (School Board) for the North Daviess Community Schools on January 28, 1999 voted to pursue the building of a new, single elementary school building to replace the three remaining schools. The School Board conducted a public hearing on February 17, 1999 to consider the construction and lease of a new elementary school building. After hearing testimony and questions from the public, the School Board unanimously voted to adopt resolutions favoring the construction and lease of a new elementary school building.[2]

Local taxpayers thereafter initiated the petition and remonstrance process provided for in Ind.Code Ann. §§ 6–1.1–20–3.1 & –3.2 (West 2000). Real property owners in the community filed 1,870 petitions favoring the project and 1,732 remonstrances opposing it. The County Auditor certified these results on June 17, 1999. (Tr. of Proceedings, Ex. 24(b).)

On September 13, 1999, the School Board approved the proposed form of a lease agreement.[3] On September 14, 1999,

---

1. The five townships are: Bogard, Elmore, Madison, Steele and VanBuren. The four towns and their respective townships are: Elnora (Elmore); Odon (Madison); Plainville (Steele); and Raglesville (VanBuren).

2. The School Board adopted two resolutions. (Tr. of Proceedings, Ex. 21(f).) The first resolution, deemed the "1028 Resolution," resolved that the new school be built. It indicated that the meeting was held to satisfy the requirement for a public hearing under IND. CODE ANN. § 20–5–52–2 (West 1995). The second resolution was labeled a "Preliminary Determination Resolution." This resolution stated that the meeting constituted a "preliminary determination hearing" in accordance with IND.CODE ANN. § 6–1.1–20–3.1 (West 2000).

3. The School Board also voted to adopt a petition by school patrons to pursue the construction and leasing of the building. (Tr. of Proceedings, Ex. 21(f).) In addition, the School Board adopted a resolution approving the formation of the not-for-profit Building Corporation for the purpose of financing, constructing and equipping the new school and leasing the school to the School Corporation. See id.; see also IND.CODE ANN. § 21–5–12–2 (West 1995) (allowing school corporations to enter into lease agreements with corporations "organized under the laws of the state of Indiana"). Another resolution adopted by the School Board found that use of a year-round school term would not eliminate the need for construction of the new building. (Tr. of Proceedings, Ex. 21(f).) This resolution satisfies the need under IND.CODE ANN. § 6–1.1–19–8(d)(2) (West 2000) to hear public testimony on an expanded school year before approving the construction of new classrooms.

the School Corporation petitioned the State Board to approve the execution of a lease of a single elementary school building pursuant to Ind.Code Ann. § 6–1.1–19–8 (West 2000). According to the petition, the School Corporation proposed to lease a school building from the "North Daviess School Building Corporation, pursuant to a net lease for twenty-two (22) years at an annual lease rental of $1,270,000 commencing on the date the school building is completed and ready for occupancy or June 30, 2001, whichever is later, with an option to purchase such building." (Original Tax Appeal Pet., Ex. A.). Planed capacity for the building is 750 students, and it is intended to serve kindergarten through sixth grade classes. The building has a projected tax rate impact of $1.80 per $100.00 of assessed valuation. Subsequently, the State Board referred the lease petition to the School Property Tax Control Board (Control Board), as permitted by Ind.Code Ann. § 6–1.1–19–8(b) (West 2000).

Following a public hearing, on October 18, 1999, the School Board approved execution of the lease agreement. Thereafter, the Control Board conducted two hearings on the lease petition, the first on October 21, 1999 and the second on November 5, 1999. Comments from both proponents and opponents of the project were considered. Several taxpayers from Daviess County attended the two meetings. The Control Board recommended approval of the lease at the conclusion of the November 5 meeting. The State Board conducted no subsequent formal briefing in this matter. On December 13, 1999, the State Board approved execution of the lease. (Original Tax Appeal Pet., Ex. C.) The lease was executed on December 13, 1999. Notice of the lease's execution, as required by Ind.Code Ann. 21–5–12–7(b) (West 1995),[4] was issued on December 15 and 17, 1999.

On January 7, 2000, Petitioners filed an original tax appeal in this Court. On February 16, 2000, the School Corporation filed a motion to intervene. The School Corporation also filed a motion to declare the present action a public lawsuit together with a request that the Court dismiss the case unless Petitioners post a satisfactory bond.[5] On March 7, 2000, the Court granted the School Corporation's motion to intervene and scheduled a hearing to consider the request to post bond. The hearing was held on March 20, 2000. On April 3, 2000, the Court entered an order finding

4. Section 21–5–12–7(b) allows ten or more taxpayers who will be affected by the proposed lease to file a petition objecting to the lease on grounds that the lease is unnecessary or unwise or that the lease rental is not fair and reasonable. Section 7(b) requires that the petition be filed within thirty days after execution of the lease has been published. However, this objection process was not available to Petitioners in the present case, because taxpayers had already undergone the petition and remonstrance process provided for in sections 6–1.1–20–3.1 and –3.2. Taxpayers favoring the proposed lease prevailed in the petition and remonstrance process. That being the case, the School Corporation was "not required to follow any other remonstrance process or objection procedures under any other law relating to bonds or leases designed to protect owners of real property within the political subdivision from the imposition of property taxes to pay debt service

or lease rentals." IND.CODE ANN. § 6–1.1–20–3.2 (West 2000).

5. The motion was filed under IND.CODE § 34–4–17–1, which has been repealed. *See* P.L. 1–1998. On March 15, 2000, the School Corporation filed an amended motion pursuant to the current public lawsuit provisions, IND. CODE ANN. §§ 34–13–5–1 to –12 (West 1999). IND.CODE ANN. § 34–6–2–124 (West 1999) defines a public lawsuit, for purposes of chapter 34–13–5, as:

(1) any action in which the validity, location, wisdom, feasibility, extent, or character of construction, financing, or leasing of a public improvement by a municipal corporation is questioned directly or indirectly, including but not limited to suits for declaratory judgments or injunctions to declare invalid or enjoin the construction, financing, or leasing; and

(2) any action to declare invalid or enjoin the creation, organization, or formation of any municipal corporation.

the matter to be a public lawsuit and took the request to set bond under advisement.[6] Petitioners filed a brief opposing the request for posting a bond on April 4, 2000.

Additional facts will be supplied where necessary.

## ANALYSIS AND OPINION

 As stated *supra*, the Court has ruled the present action to be a public lawsuit. Section 34–13–5–7 of the public lawsuit statutes provides:

(a) At any time before the final hearing in a public lawsuit, the defendant may petition for an order of the court that the cause be dismissed unless the plaintiff posts a bond with surety to be approved by the court. The bond must be payable to the defendant for the payment of all damages and costs that may accrue by reason of the filing of the lawsuit if the defendant prevails.

(b) A hearing shall be held on a petition described in subsection (a) in the same manner as the hearing on temporary injunctions under IC 34–26–1. If, at the hearing, the court determines that the plaintiff cannot establish facts that would entitle the plaintiff to a temporary injunction, the court shall set the amount of bond to be filed by the plaintiff in an amount found by the judge to cover all damage and costs that may accrue to the defendants by reason of the pendency of the public lawsuit in the event the defendant prevails.[7]

In a public lawsuit, the plaintiff is not actually seeking a temporary injunction; rather, he is seeking to avoid posting a bond. *See Bell v. State Bd. of Tax*

Comm'rs, 651 N.E.2d 816, 821 (Ind.Tax Ct.1995). To avoid posting a bond, Petitioners must introduce evidence sufficient to show that there is a substantial question to be tried. *See id.* (citing *Johnson v. Tipton Community Sch. Corp.*, 253 Ind. 460, 255 N.E.2d 92, 94 (1970)). Therefore, Petitioners must present sufficient evidence showing that the State Board's approval was arbitrary and capricious, an abuse of discretion, unsupported by substantial evidence or in excess of statutory authority. *See Hall v. State Bd. of Tax Comm'rs*, 512 N.E.2d 891, 893 (Ind.Tax Ct.1987) (finding no substantial question to be presented as to State Board's final determination in public lawsuit). Petitioners do not have to make out such a case that would entitle them to relief on the final hearing. *See Bell*, 651 N.E.2d at 820 (quoting *Johnson*, 253 Ind. at 464, 255 N.E.2d at 94). In reviewing Petitioners' claims, the Court will not reweigh the evidence presented to the State Board at the administrative level. *See State Bd. of Tax Comm'rs v. Gatling Gun Club*, 420 N.E.2d 1324, 1328 (Ind.Ct.App.1981).

 The State Board is Indiana's property tax specialist and is vested with broad discretion to exercise its powers in the performance of its duties. *See Bell*, 651 N.E.2d at 819–20. The legislature has directed the State Board to consider the following factors when determining whether to approve or disapprove a school building construction project (and by implication the approval of a lease for a newly constructed school building):

(1) The current and proposed square footage of school building space per student.

---

**6.** On March 20, 2000, the Court allowed the permissive joinder of the following persons to this action: Herschel Malone, Linda L. Malone, Kathryn Mae Malone, Karla J. Beasley, Carla Beasley, Bradley C. Beasley, Lela Overton, Betty J. Walker, Wally Walker, Bobby J. Boardman, Leslie D. Boardman, Patty A. Boardman, Robert E. Boardman, and Karen E. Karns. On April 3, 2000, the Court granted the motions of the following persons to withdraw from this case: Glen S. Graber,

Heidi M. Graber, Chad Wilson, Normal Wilson, Walter Graber, Kenneth L. Wagler, Corene Graber, Marlene Graber and Ada Marie Graber. On May 8, 2000, the Court also granted the motion of Amos D. Graber to withdraw from this case.

**7.** If the bond with sureties is ordered by a court and not filed within ten days after the order is entered, the court shall dismiss the suit. *See* IND.CODE ANN. § 34–13–5–7(c) (West 1999).

(2) Enrollment patterns within the school corporation.

(3) The age and condition of the current school facilities.

(4) The cost per square foot of the school building construction project.

(5) The effect that completion of the school building construction project would have on the school corporation's tax rate.

(6) Any other pertinent matter.

IND.CODE ANN. § 6–1.1–19–4.2 (West 2000).[8] This statute does not require the State Board to assign greater weight to any one of the listed factors; also, the State Board does not have to consider any single factor dispositive in reaching its decision. Moreover, the State Board only has to consider each of the listed factors. It does not have to base its ultimate decision on them. The sixth factor, of course, gives the State Board leeway to consider any non-listed factor that it considers "pertinent" to the matter.[9] For purposes of considering whether a substantial issue for trial has been raised by Petitioners, the Court will first determine whether Petitioners in this public lawsuit have presented evidence demonstrating that the State Board failed to consider any of the listed factors, including any pertinent factor not specifically listed. *Cf. Ackelmire v. North Vermillion Community Sch. Corp.*, 558 N.E.2d 916, 921 (Ind.Tax Ct.1990) (observing that, where substantial question would be whether notice was properly issued, the

Court "need only examine whether Plaintiffs can reasonably prove the School Board failed to publish the notice required"). Failure to consider the listed factors would constitute an abuse of discretion by the State Board.

In its final determination approving the lease agreement, the State Board expressly states that it considered the factors listed in section 6–1.1–19–4.2. (Original Tax Appeal Pet., Ex. C.) The final determination does not itself list facts relating to factors one through five. It does, though, reference concerns over enrollment trends regarding Amish students and identifies the tax impact at $1.80 per $100.00 of assessed value. (Original Tax Appeal Pet., Ex. C ¶¶ 10 & 11.) Further, the final determination addressed the age and condition of the existing elementary schools, stating: "The continued maintenance of outdated facilities like Raglesville, Odon and Elnora will burden taxpayers and result in increased operating expenses for school officials. The physical qualities of the buildings do not appear to warrant extensive renovation or repair." (Original Tax Appeal Pet., Ex. C ¶ 12.) Moreover, Counsel for the School Board at the March 20, 2000 hearing on this matter indicated that the State Board had considered each factor. (Hr'g Tr. at 63–64.) Petitioners point to no evidence of record showing that the State Board failed or refused to consider factors one through five.

---

**8.** Section 6–1.1–19–4.2 requires the Control Board to consider these same factors when determining whether to recommend approval or disapproval of a school building construction project.

**9.** Thus, while the approval process under section 6–1.1–19–8 does not require it, the State Board may deem it proper to consider whether the school construction project at issue is necessary or wise or whether the lease rental is fair and reasonable—the standards that the State Board must apply when considering a challenge to a building project brought under sections 21–5–11–7 and –12–7. *See Riley at Jackson Remonstrance Group v. Indiana State Bd. of Tax Comm'rs*, 642 N.E.2d 562, 566

(Ind.Tax Ct.1994) (section 21–5–11–7 appeal), *appeal after remand*, 663 N.E.2d 802 (Ind.Tax Ct.1996); *Bell*, 651 N.E.2d at 821–23 (section 21–5–12–7 appeal); and *Boaz v. Bartholomew Consol. Sch. Corp.*, 654 N.E.2d 320, 325–26 (Ind.Tax Ct.1995) (section 21–5–12–7 appeal). Flexibility on the part of the State Board is important, because, as this Court has observed in the context of appeals brought under sections 21–5–11–7 & –12–7, "As every school corporation is unique, so too is every lease rental agreement.... [A]ny standard more specific could not possibly take into account the myriad of factors that might be relevant in any given case...." *Boaz*, 654 N.E.2d at 323.

Without stating so, Petitioners essentially attack factor six, which requires the State Board to consider other any other "pertinent matter." They contend that the State Board: (1) failed to recognize soil and wastewater problems with the proposed construction site; and (2) failed to consider the educational needs of Amish students within the school district. (Pet'r Br. Supp. Denial for Bond Req. at 10–20.) The State Board considered both of these concerns. (Original Tax Appeal Pet., Ex. C ¶¶ 12 & 13.) Therefore, Petitioners have presented no evidence that the State Board failed to consider the statutory factors listed in section 6–1.1–19–4.2, including any "pertinent matters" raised by Petitioners.

Petitioners could also show that a substantial issue for trial exists by presenting evidence that, despite having considered the proper factors, the State Board's approval was still arbitrary and capricious, constituted an abuse of discretion, was not supported by substantial evidence or exceeded statutory authority. They have not done so. Petitioners did show that the Amish community had legitimate concerns regarding transportation, curriculum and parental involvement as regards the proposed elementary school; further, at the time of the Control Board hearings, certain soil and wastewater issues were not resolved. The State Board basically acknowledged this in its findings. (Original Tax Appeal Pet., Ex. C ¶¶ 12 & 13.) [10]

■ Evidence does show that Amish taxpayers may not receive the educational program they desire for their children. The record clearly demonstrates, though, that a majority of real property taxpayers in the North Daviess area favored the new school building and that the elected School Board members have steadfastly sup-

ported the project. Petitioners ask this Court to trump the State Board's decision deferring to the School Board's and community's support for a single new elementary school. The issue presented by Petitioners is one of educational policy, not tax policy. Though certainly not without reasonable limits, it is within the State Board's discretion to defer to the School Board's determination that a one-school option will provide an improved education environment for all students. (Original Tax Appeal Pet., Ex. C ¶¶ 7, 8 & 12.) *Cf. Bell,* 651 N.E.2d at 820 (noting that purpose of section 21–5–12–7 is to require the State Board to determine whether a lease agreement is necessary and rental payments are fair and reasonable from a tax standpoint, not an educational standpoint). As this Court stated in *Boaz,* 654 N.E.2d at 325–26:

> The decision to implement [educational programs] is one properly delegated to the local school corporation, the Indiana Department of Education, and the State Board of Education. Indeed, those agencies have expertise in educational matters.... It is not the function of the State Board to pass judgment on the implementation of educational programs. Rather, the State Board is to analyze the School Corporation's need for capital construction in light of the School's educational programs.

The School Board and North Daviess taxpayers have chosen the one-school concept as a means of implementing the School Corporation's educational program. Through the petition and remonstrance process, Petitioners "had their chance to stop the project but failed to convince a sufficient number of their neighbors of the wisdom of their position." *Boshart v. State Bd. of Tax Comm'rs,* 672 N.E.2d 499,

---

10. The State Board found the new school to be "necessary." (Original Tax Appeal Pet., Ex. C ¶ 16.) Petitioners attempt to show that the State Board's decision was improper by arguing that the proposed school does not serve the needs of Amish students and that the proposed site has soil and wastewater problems. In essence, they argue that the building is unnecessary and unwise due to these alleged shortcomings. They must therefore provide sufficient evidence that these problems are present and that they represent substantial issues for trial.

501 (Ind.Tax Ct.1996). The State Board acknowledged that the merits of the one-school option may be debatable. (Original Tax Appeal Pet., Ex. C ¶ 16.) But, the State Board concluded that the proposed school "suffers from no significant limitations." (Original Tax Appeal Pet., Ex. C ¶ 16.) Petitioners have not produced evidence demonstrating that the State Board abused its discretion or acted arbitrarily or capriciously in approving the lease agreement. Thus, they have not shown that a substantial issue for trial exists, as regards the School Corporation's choice to build a single elementary school building.[11]

Likewise, Petitioners have not shown that a substantial issue for trial exists in connection with the soil and wastewater at the proposed construction site. The State Board, in its final determination, acknowledged that the soil type at the construction site requires a "deep support" and stated that contingency dollars may be necessary to resolve drainage problems. (Original Tax Appeal Pet., Ex. C ¶ 13.) The State Board further noted that officials were reviewing options to address wastewater needs. (Original Tax Appeal Pet., Ex. C ¶ 13.) The State Board stated that it lacked expertise in architectural design, drainage or other engineering disciplines. (Original Tax Appeal Pet., Ex. C ¶ 14.) Accordingly, the State Board reasoned, "Absent clear evidence to the contrary, the Board must assume that the licensed professionals employed by the School can be relied upon to provide sound counsel to such engineering matters." (Original Tax Appeal Pet., Ex. C ¶ 14.) Again, the State Board is recognized as Indiana's tax specialist, not Indiana's educational or engineering specialist. See Bell, 651 N.E.2d at 819–20. The State Board thus could at its discretion trust the School Board to employ competent professionals to address the soil and wastewater concerns. Petitioners' evidence did not show that problems existed to the extent that even non-experts would be able to deem the proposed construction project improper.[12]

Opinions may differ as to whether a single, new elementary school best serves the educational needs of children in the North Daviess community and whether the chosen site is the best location for that school. However debatable those issues may be, the evidence presented does not raise substantial issues for trial. Therefore, Petitioners will be required to post a sufficient bond pursuant to section 34–13–5–7. The School Board called two witnesses to elaborate upon the financial impact of delaying construction. The School Board's education consultant estimated that a five-month delay in the project could set back the entire construction schedule for one year. (Hr'g Tr. at 138.) He estimated the monthly increase in construction cost to be roughly $72,500. (Hr'g Tr. at 136.) Given these numbers, a one year delay in construction could cost the School Corporation $870,000. The School Corporation's financial advisor estimated that delay could increase financing costs for the project as much as $1,160,000. (Hr'g Tr. at 148; Intervenor's Ex. 9 at 3.) Thus,

11. The Court realizes that the decision to build a new, single elementary school has divided the North Daviess taxpayers and generated not only much debate but also much ill-will among community members. However, as indicated in Riley, 663 N.E.2d at 807 n.3, it is not the Court's function to decide whether a school construction project is a good idea or a bad idea. Moreover, it is not the Court's role to decide what type of educational plan should serve any particular segment of the population. Rather, in the present case, the Court must decide whether Petitioners have raised a substantial question for trial in connection with the propriety of the State Board's decision approving the lease agreement. They have not done so.

12. The Court notes that studies and reports unavailable to the State Board at the time of its final determination but provided by the School Corporation at the hearing in this matter show that the soil and wastewater issues have been adequately addressed. (Intervenor's Exs. 4–8.) However, in deciding whether the State Board's approval was proper, this Court can consider only that evidence presented to it during the administrative process. See Gatling Gun Club, 420 N.E.2d at 1328–29.

according to the School Corporation, a one-year delay in completing the new elementary school building could cost it approximately $2,030,000. However, the School Board has only requested that Petitioners post a bond for $1,800,000. (Hr'g Tr. at 151.) Petitioners have presented no evidence contesting the School Board's estimates or otherwise arguing why the requested amount is unreasonable. Given the speculation involved in making a calculation of this nature, the Court finds that the bond amount requested by the School Corporation is reasonable. Accordingly, the Court finds that should the School Corporation prevail in this original tax appeal, damages and costs may accrue to it in the total amount of $1,800,000.

## CONCLUSION

For the aforementioned reasons, Petitioners are ORDERED to post bond with surety in the amount $1,800,000. The bond must be submitted to the Court for its approval within ten days from the date of this order. If not so filed, the Court shall dismiss the present case pursuant to section 34–13–5–7(c).