ATTORNEY FOR PETITIONERS:
**JAMES P. FENTON**
ATTORNEY AT LAW
Fort Wayne, IN

ATTORNEYS FOR RESPONDENTS:
**THEODORE E. ROKITA**
ATTORNEY GENERAL OF INDIANA
**THOMAS L. MARTINDALE**
**J. DEREK ATWOOD**
DEPUTY ATTORNEY GENERALS
Indianapolis, IN

**MARK J. CRANDLEY**
BARNES & THORNBURG LLP
Indianapolis, IN

# IN THE
# INDIANA TAX COURT

|  |  |  |
|---|---|---|
| ALICE LUEBKE, TINA HUGHES, AMANDA SCHEITLIN, and ANN CORNEWELL, | ) ) ) | |
| Petitioners, | ) ) | |
| v. | ) ) | Cause No. 24T-TA-00007 |
| INDIANA DEPARTMENT OF LOCAL GOVERNMENT FINANCE, ALLEN COUNTY, INDIANA (an Indiana municipality), ALLEN COUNTY BOARD OF COMMISSIONERS, being F. NELSON PETERS, THERESE M. BROWN, and RICHARD BECK, in their official capacities only, and the ALLEN COUNTY, INDIANA BUILDING CORPORATION, | ) ) ) ) ) ) ) ) ) ) ) | |
| Respondents. | ) ) | |

FILED
Jul 05 2024, 11:27 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

## ORDER ON THE RESPONDENTS' MOTION FOR BOND

**FOR PUBLICATION**
**July 5, 2024**

WELCH, Special J.

Taxpayers are challenging the County's plan to build a new jail, claiming that the

financing method, upheld by the Department of Local Government Finance (the "DLGF"), is contrary to law. The County has filed a motion pursuant to the Public Lawsuit Statute, requesting that the Taxpayers post a bond of over $90 million to proceed with their appeal. The primary issue before the Court is whether the Taxpayers' appeal presents a substantial issue to be tried. Additionally, the parties seek to confirm the Court's subject matter jurisdiction over this appeal. The Court, affirming its jurisdiction and recognizing the existence of a substantial issue to be tried, denies the County's motion for bond.

## FACTS AND PROCEDURAL HISTORY

The Allen County Jail was constructed over forty years ago and has undergone several renovations. (*See* Pet'rs' V. Pet. Jud. Rev. Final Determination Indiana Dep't Loc. Gov't Fin. Dated Feb. 22, 2024 ("Pet'rs' Pet."), Ex. A ¶ 40; Hr'g Tr. at 8.) "[I]t has 732 available beds," but its maximum occupancy is approximately 80% of this number, with a capacity of just 586 inmates.[1] (Pet'rs' Pet., Ex. A ¶ 40.) In recent years, its occupancy has ranged from 700 to 900 inmates. (Pet'rs' Pet., Ex. A ¶ 40.)

In January 2020, a class action lawsuit was initiated against Allen County and its Sheriff in the United States District Court for the Northern District of Indiana, Fort Wayne Division. *Morris v. Sheriff of Allen Cnty.*, No. 1:20-CV-34 DRL, 2022 WL 971098 at *1 (N. D. Ind. Mar. 31, 2022). The plaintiffs contended that the jail's conditions – such as overcrowding, understaffing, and threats to inmate safety – violated the Eighth and Fourteenth Amendments to the United States Constitution. *Id.* Ultimately, the District

---

[1] "A jail is overcrowded long before every bed is filled. This is because there must be enough beds in the proper cell locations so that prisoners can be adequately classified and separated." *Morris v. Sheriff of Allen Cnty.*, No. 1:20-CV-34 DRL, 2022 WL 971098 at *9 (N.D. Ind. Mar. 31, 2022).

Court found that the conditions prevailing at the Allen County Jail violated the Eighth and Fourteenth Amendment rights of both current and future inmates. *Id.* at *16. In addition to mandating corrective measures, the District Court ordered the defendants to submit a plan proposing a long-term solution. *Id.* at *16-17.

The Allen County Commissioners (the "Commissioners") subsequently hired the architectural firm Elevatus to evaluate the feasibility of various options for alleviating current and future conditions at the Allen County Jail. (*See* Pet'rs' Pet., Ex. A ¶ 108.) Elevatus prepared a report that analyzed various solutions, including the vertical or horizontal expansion of the current jail, the establishment of a regional jail, the outsourcing of inmates to nearby county jails, and the construction of a new jail at a different location. (Pet'rs' Pet., Ex. A ¶ 108.) The Commissioners chose to build a new jail. (Pet'rs' Pet., Ex. A ¶ 109.)

The construction of the new jail was projected to span three years, with an estimated cost of $318 million. (*See* Pet'rs' Pet., Ex. A ¶¶ 49, 67, 119.) Several measures were undertaken to facilitate and finance the new jail, including the establishment of the Allen County, Indiana Building Corporation (the "Building Corporation"), the transfer of the historic Allen County Courthouse (the "Courthouse") to this newly formed entity, and the execution of a lease-purchase agreement (the "Lease"). (*See* Pet'rs' Pet., Ex. A ¶¶ 1, 103-05; Bond Hr'g Ex. A, Ex. B at 7-8.) The Lease, executed on December 1, 2023, by the Building Corporation (the lessor) and Allen County (the lessee), provided that the Building Corporation would lease the existing Courthouse to Allen County during the construction of the new jail. (*See* Bond Hr'g Ex. A at 1.) The County sought "to avoid capitalizing interest accrued during [the]

3

construction [of the new jail] and [to] reduce the overall lease rental" payments through this aspect of the rental agreement. (*See* Pet'rs' Pet., Ex. A ¶ 104.) Upon completion, the Building Corporation would then lease the newly built jail to the County. (*See* Bond Hr'g Ex. A at 1.) The rental payments were to be funded through a combination of sources: an adjusted gross income tax imposed under Indiana Code section 6-3.6-6-2.7 (the "Jail LIT"), revenues appropriated from the economic development portion of a local income tax, and, if necessary, an *ad valorem* property tax. (*See* Pet'rs' Pet., Ex. A ¶ 12; Bond Hr'g Ex. D.)

Several Allen County taxpayers subsequently filed a petition with the Allen County Auditor, objecting to the execution of the Lease. (*See* Pet'rs' Pet., Ex. A ¶ 2.) On December 15, 2023, the Allen County Auditor certified the petition to the DLGF thereby presenting the taxpayer's objections for consideration. (*See* Pet'rs' Pet., Ex. A ¶ 10.) After conducting a public hearing, the DLGF issued a final determination on February 22, 2024, rejecting the taxpayers' objections and denying their petition. (*See* Pet'rs' Pet., Ex. A ¶¶ 72-121.)

On March 21, 2024, Taxpayers Alice Luebke, Tina Hughes, Amanda Scheitlin, and Ann Cornewell instituted this appeal by filing a verified petition for review. On April 22, 2024, Allen County and the Commissioners filed their Motion to Require Plaintiff to Post Bond Pursuant to the Indiana Public Lawsuit Statute. On May 8, 2024, the Petitioners filed their Brief in Opposition to Respondents' Motion to Require the Plaintiff to Post Bond Pursuant to the Indiana Public Lawsuit Statute. On May 15, 2024, Allen County and the Commissioners filed their Reply Brief. On June 10, 2024, the Petitioners filed their Submission of Additional Documents Relevant to the Hearing on the

Respondents' Motion to Require the Plaintiff to Post a Bond Pursuant to the Indiana Public Lawsuit Statute. The Court held an evidentiary hearing and oral argument on this motion on June 12, 2024, in Allen County. During the hearing, Petitioners' Exhibits A through D were admitted into evidence without objection. (*See* Notice, June 13, 2024.) Additional facts will be provided, as necessary.

## I. Subject Matter Jurisdiction

The Tax Court has exclusive jurisdiction over original tax appeals, specifically all cases that arise under the tax laws of Indiana and that are initial appeals of final determinations made by one of the three administrative tax agencies: the Indiana Board of Tax Review, the Indiana Department of Revenue, or the DLGF. *See* IND. CODE §§ 33-26-3-1, -6-0.2 (2024); Ind. Tax Ct. Rule 2(A). A case "arises under" the tax laws if an Indiana tax statute creates the right of action or the case principally involves the collection of a tax or defenses against such collection. *State v. Sproles*, 672 N.E.2d 1353, 1357 (Ind. 1996). The final determination requirement aligns with a fundamental principle of administrative law: a party seeking judicial relief from an agency decision must first exhaust all administrative remedies. *State Bd. of Tax Comm'rs v. Ispat Inland, Inc.*, 784 N.E.2d 477, 482-83 (Ind. 2003).

The Taxpayers filed the present appeal pursuant to Indiana Code section 36-1-10-15, while contemporaneously filing an action in the Allen County Superior Court. (Pet'rs' Pet. ¶ 18, n.1.) This statute provides:

> An action to contest the validity of a lease under this chapter, or to enjoin performance under the lease, must be brought within thirty (30) days after publication of notice of the execution of the lease by the leasing agent or, if an appeal has been taken to the department of local government finance, then within thirty (30) days after the decision of the department.

IND. CODE § 36-1-10-15 (2024). Although neither party disputes that this case arises under Indiana tax laws and appeals a final determination issued by one of the above-mentioned administrative agencies, the parties seek to confirm the Court's subject matter jurisdiction given the statute's silence as to the appropriate forum for their appeal. (*Compare* Resp'ts' Br. Supp. Mot. Require Pl. Post Bond Pursuant to the Ind. Pub. Lawsuit Statute ("Resp'ts' Br.") at 11-13 *with* Pet'rs' Br. Opp'n [Resp'ts' Br.] at 2.)

The Petitioners are four among several Allen County taxpayers who opposed the County's execution of the Lease under Indiana Code section 36-1-10-1. The lease rental payments were to be funded either entirely or partially by two different local income taxes – one of which was newly imposed (*i.e.,* the Jail LIT) – and an *ad valorem* property tax imposed pursuant to Indiana Code section 36-1-10-17.[2] They sought review of the Lease as authorized by Indiana Code section 36-1-10-14,[3] and following the issuance of the DLGF's final determination, by Indiana Code section 36-1-10-15. Among several other assertions, they have contended that the County's funding method, specifically its transfer and subsequent leasing of the Courthouse, is not

---

[2] Indiana Code section 36-1-10-17 provides that "[a] political subdivision or agency that executes a lease under this chapter shall, subject to subsection (d), make an annual appropriation and tax levy at a rate to provide sufficient money to pay the rental payable from property taxes stipulated in the lease." IND. CODE § 36-1-10-17(a) (2024).

[3] Indiana Code section 36-1-10-14, in relevant part, provides:

> If lease rentals are payable, in whole or in part, from property taxes, ten (10) or more taxpayers in the political subdivision who disagree with the execution of a lease under this chapter may file a petition in the office of the county auditor of the county in which the leasing agent is located, within thirty (30) days after publication of notice of the execution of the lease. The petition must state the taxpayer's objections and the reasons why the lease is unnecessary or unwise.

IND. CODE § 36-1-10-14(c) (2024).

authorized under the lease-purchase statutory scheme.

The crux of the Taxpayers' challenge centers on the imposition and collection of these taxes, as their opposition to the lease-purchase agreement for the new jail fundamentally involves claims against the taxes intended to finance the project. These jurisdictional facts establish that the Taxpayers' appeal principally involves the collection of taxes and defenses to that collection, and that they have appealed from a final determination of the DLGF. Accordingly, the Court finds that it has subject matter jurisdiction over this original tax appeal.

## II. Is There a Substantial Question to Be Tried?

The parties do not dispute that this original tax appeal involves a public lawsuit under Indiana Code chapter 34-13-5. Therefore, the provisions of Indiana Code section 34-13-5-7 are applicable:

> (a) At any time before the final hearing in a public lawsuit, the defendant may petition for an order of the court that the cause be dismissed unless the plaintiff posts a bond with surety to be approved by the court. The bond must be payable to the defendant for the payment of all damages and costs that may accrue by reason of the filing of the lawsuit if the defendant prevails.
>
> (b) A hearing shall be held on a petition described in subsection (a) in the same manner as the hearing on temporary injunctions under IC 34-26-1. If, at the hearing, the court determines the plaintiff cannot establish facts that would entitle the plaintiff to a temporary injunction,[4] the court shall set the amount of bond to be filed by the plaintiff in an amount found by the judge to cover all damages and costs that may accrue to the defendants by reason of the pendency of the public lawsuit in the event the defendant prevails.
>
> (c) If the plaintiff does not file a bond with sureties approved by the court within ten (10) days after the order to do so is entered, the

---

[4] "The phrase 'temporary injunction' has been in the statute since 1967, and predates the current Trial Rules which refer to 'temporary restraining order' and 'preliminary injunction.'" *Marshall Cnty. Tax Awareness Comm. v. Quivey*, 780 N.E.2d 380, 382 n.4 (Ind. 2002) (citation omitted).

7

suit shall be dismissed.

IND. CODE § 34-13-5-7(a)-(c) (2024) (footnote added). To avoid the bond requirement, the Taxpayers must present evidence sufficient to demonstrate that there is "a substantial question to be tried." *See Graber v. State Bd. of Tax Comm'rs*, 727 N.E.2d 802, 806 (Ind. Tax Ct. 2000) (citing *Johnson v. Tipton Cmty. Sch. Corp.*, 255 N.E.2d 92, 94 (Ind. 1970)), *review denied.* However, they need not present a case strong enough to warrant relief at the final hearing. *See id.*

The purpose of the Public Lawsuit Statute "is to protect the public against a 'flood of harassing litigation' which obstructs and delays public improvement at prohibitive costs and from the 'financial damage of completely non-meritorious litigation.'" *Johnson*, 255 N.E.2d at 94 (citation omitted). This statutory scheme

> provide[s] for a vehicle for the citizens and taxpayers of the community to be represented in a suit that questions the validity of the actions taken by the local government unit for public construction, but at the same time provide[s] for a means to limit the delay and frustration of the public project by those citizens who would bring an action or a series of actions for the sole purpose of delaying or changing the financing and construction of the proposed project.

*Pepinsky v. Monroe Cnty. Council*, 461 N.E.2d 128, 132 (Ind. 1984).

As previously mentioned, the primary issue on appeal and the focus of the Court's evidentiary hearing is whether the County's funding method for the new jail, particularly its transfer and subsequent leasing of the Courthouse, is permissible under Indiana Code sections 36-1-10-7(c) or 36-1-10-16(a).[5] The Taxpayers argue that their

---

[5] Indiana Code section 36-1-10-7(c) provides:

> (c) A leasing agent for a political subdivision, other than a school corporation, may not lease a structure, transportation project, or system

8

appeal raises a substantial question, necessitating the Court's determination of a first impression issue: whether either statute expressly authorizes the funding method at issue in this case. (*See* Hr'g Tr. 28-30.) Consequently, the Taxpayers contend that their appeal presents a meritorious issue, not a baseless claim intended to harass. (*See* Hr'g Tr. at 29-30.)

In response, Allen County and the Commissioners argue that the issue at hand is beyond the scope of judicial review, asserting that the Court must limit its evaluation to what the DLGF was statutorily authorized to review – specifically, whether the Lease was unnecessary or unwise. (*See* Hr'g Tr. at 10-11.) They further argue that the Taxpayers' claim regarding the lack of express statutory authority for the disputed funding method "is just wrong" because the authority vested by the Home Rule Act (*i.e.,* Indiana Code sections 36-1-3-1 to -9), combined with the absence of an express prohibition within the lease-purchase statutory scheme, confirms the legality of the County's funding strategy, leaving no substantial question to be tried. (Hr'g Tr. at 10, 12-17.) The Court finds these arguments unpersuasive at this early stage of the litigation.

The premise underlying the first argument is that the Court lacks the authority to resolve legal questions arising from an agency's decision. The Taxpayers contend that

---

unless:

> (1) the leasing agency receives a petition by fifty (50) or more taxpayers of the political subdivision or agency; and

> (2) the fiscal body of the political subdivision determines, after investigation, that the structure, transportation project, or system is needed.

IND. CODE § 36-1-10-7(c) (2024). In turn, Indiana Code section 36-1-10-16(a) provides: "A political subdivision or agency owning a structure with respect to which its revenue bonds are outstanding may, to refinance those bonds, convey the structure to the lessor in fee simple and lease it from the lessor in accordance with this chapter." IND. CODE § 31-1-10-16(a) (2024).

the DLGF's final determination is contrary to law, despite its finding that the Lease is necessary and wise because this finding sanctions an unlawful action. The DLGF's inability to review the Taxpayers' specific claims of unlawfulness does not preclude this Court from examining this issue of first impression. This Court, like other appellate courts, is "'free to resolve any legal questions that arise from [an] agency's decision . . . and [is] not bound by [the agency's] interpretation of the law because the law is the province of the judiciary.'" *Indiana Dep't of Env't Mgmt. v. West*, 838 N.E.2d 408, 415 (Ind. 2005) (quoting *Andrianova v. Indiana Fam. & Soc. Servs. Admin.*, 799 N.E.2d 5, 7 (Ind. Ct. App. 2003)). Consequently, determining whether the disputed funding method for the new jail is authorized under Indiana Code sections 36-1-10-7(c) and 36-1-10-16(a) is not beyond the scope of this Court's review.

The Home Rule Act "abrogated the traditional rule that local governments possessed only those powers expressly authorized by statute." *City of N. Vernon v. Jennings Nw. Reg'l Utils.*, 829 N.E.2d 1, 4 (Ind. 2005). The second argument suggests that the authority granted to Allen County and the Commissioners under the Home Rule Act is virtually limitless. However, the Indiana Supreme Court has clarified that while the Home Rule Act grants "counties, municipalities, and townships, with expansive and broad-ranging authority to conduct their affairs[,]" it is not without limitations, as unique and anticipated situations may arise. *See id.* at 5. This inherent limitation underscores the substantial question of whether the County's funding method, particularly the transfer and leasing of the Courthouse to finance the new jail, falls within the permissible bounds of the Home Rule Act as well as Indiana Code sections 36-1-10-7(c) and 36-1-10-16(a).

10

Accordingly, the Court finds that the Taxpayers' verified petition for review raises a substantial question to be tried regarding the legality of the County's funding method for a new jail. Given the complexity of this issue of first impression, it is important that this Court thoroughly examine whether the transfer and leasing of the Courthouse to finance a new jail is authorized under the lease-purchase statutory framework. Therefore, the Taxpayers need not post a bond in the amount of $91,628,223 to proceed with this action.

## CONCLUSION

For the above-stated reasons, the County's motion for bond is denied. The Court confirms that the June 8, 2024, order establishing a case management plan remains in effect.

SO ORDERED this 5th day of July 2024.

*Heather A. Welch*

Heather A. Welch
Special Judge, Indiana Tax Court

Distribution:
James P. Fenton, Mark J. Crandley, Thomas L. Martindale, J. Derek Atwood